GRANT v. WHITWELL, MARSH & TALBOTT.

1. LANDLORD'S LIEN.   The landlord's lien, provided by section 1270, Code of 1851, attaches to all personal property kept by the tenant upon the leased premises in the prosecution of the business for which the tenancy was created.

2. SAME: "USE."   Such lien is not limited to leases of farms, and the word "use," as it occurs in said section, is not employed in the limited sense in which it is applied to agricultural implements.

3. LIEN.   A lien is an obligation, tie or claim which attaches itself to property, for the satisfaction of which such property is bound.   Statutory liens without possession, have the same virtue that existed in common law liens accompanied by possession.

4. WHEN LANDLORD'S LIEN ATTACHES.   The landlord's lien attaches as the rent accrues under the contract of lease, and not from the time of the commencement of proceedings to enforce it.

5. PROPERTY UPON WHICH IT ATTACHES.   The lien attaches only to property used and incident to the business for the prosecution of which the premises were leased.

6. SAME.   *Semble,* that it does not attach to goods sold before the lien is enforced, when selling was the business for which the property was leased.

7. EXTENT OF LIABILITY.   When property, subject to a landlord's lien, is removed from the leased premises by legal process, it is liable only for the rent which has accrued at the time of the removal.   *Per* WRIGHT, C. J.

*Appeal from Scott District Court.*

FRIDAY, JUNE 24.

The plaintiff moved the court below for a rule upon the sheriff, to pay over to him certain money in his hands. The facts upon which the motion was based, were admitted to be as follows:

On the 1st of April, 1857, Grant leased to Butts & Thompson, a store room in Davenport, for the term of two years, the rent to be paid monthly on the last day of each month. Butts & Thompson were merchant tailors, and the room was leased to them, and they used it to carry on their business as such merchants. This business was continued by them in the store, until the 16th of January, 1858, when Whitwell, Marsh & Talbott sued the lessees, and attached the stock of goods in the store. At that time, the rent was due for December, 1857. On March 19th, 1858, and after the goods had been removed by the sheriff, from the store, Grant commenced his action against Butts & Thompson, to recover the rent due for December, January and February, and sued out an attachment against the property which had been upon the premises during the term of the lease. This attachment was levied upon the same goods, which were afterward sold by the sheriff, in accordance with section 1881 of the Code. This property was not used upon the premises for any other purpose than "the keeping it thereon for the purpose of sale to customers." Other portions of the stock in trade had been actually sold to customers, from time to time, with the knowledge of Grant, up to the 16th of January, 1858. Grant recovered judgment for the amount of rent claimed. The court ordered the sheriff to pay the landlord's judgment from the money in his hands, and from this order, the creditors appeal.

*Gurley & Rogers*, for the appellant, cited Broom's Legal Maxims, 450; *Bullard* v. *Goffe*, 20 Pick. 252; 1 Kent Com. 462; *United States* v. *Fisher*, 2 Cranch, 358; 1 Curtis,

496; *Woods* v. *Lowry*, 17 Wend. 492; *Griswold* v. *Sheldon*, 4 Comst. 580; *Edgell* v. *Hart*, 5 Seld. 213; *Ford* v. *Williams*, 3 Kernan, 577; *Robbins* v. *Parker*, 3 Metc. 117; *Collins* v. *Myers*, 16 Ohio, 547.

*James Grant, pro se,* cited Taylor's Landlord & Tenant, sec. 556; 3 Kent, 485.

WOODWARD, J.—The law of this State upon this subject, is found in sections 1270 and 1271 of the Code, and it is as follows:

"1270. A landlord shall have a lien for his rent, upon all crops grown upon the demised premises, and upon any other personal property of the tenant, which has been used on the premises during the term, and not exempt from execution, for the period of one year after a year's rent, or the rent of a shorter period claimed, falls due; but such lien shall not, in any case, continue more than six months after the expiration of the term."

"1271. The lien may be effected by the commencement of an action within the period prescribed, for the rent due, in which action the landlord will be entitled to a writ of attachment, upon filing with the proper clerk, or the justice, an affidavit that the action is commenced to recover rent accrued within one year previous thereto, upon premises described in the affidavit."

The defendants claim that the landlord has no lien on goods kept for sale, and not for use; that no demised premises are within the provisions of the statute, except farms, or agricultural lands. Such a construction would, in our opinion, exclude from the benefit of the statute, a class of persons most needing its aid. It not only unnecessarily limits the operation of language general in its terms, but it discriminates in favor of the tenant in towns, and against those upon agricultural lands—a discrimination both unwise and without precedent. By the Roman law, the landlord's lien for farm rent, was confined to the products of the field, and did not extend to implements of husbandry; but, in case of

a house rented, all the movables were liable to distress. Chancellor Kent says, (3 Com. 385) "the contract for rent, and the remedy of distress, are in constant use and application, and in our cities and large towns, there arc few branches of the law that affect more sensibly the interests of every class of the people. The law may be deemed rather prompt and strict with respect to the interests of the landlord, but I am inclined to think it is a necessary provision, and one dictated by sound policy. It is best for the tenant, that he should feel the constant necessity of the early and punctual performance of his contract. It stimulates to industry, economy, temperance and wakeful vigilance; and it would tend to check the growth and prosperity of our cities, if the law did not afford to landlords a speedy and effectual security for their rents, against the negligence, extravagance and frauds of tenants. It is that security which encourages moneyed men to employ their capital in useful and elegant improvements. And if they are driven in every case, to the slow process of a suit at law, for their rent, it would lead to vexatious and countless law suits, and be in many respects detrimental to the public welfare."

Besides the above suggestion by the defendants, that the lien is given only in the case of leases of farms, and does not exist in leases of houses and store rooms in towns, some argument is sought to be drawn from the use of certain terms in the statute. The word "effected" is an instance of this. But there seems no reason to doubt that, when the law says the lien shall be *effected* in the manner pointed out, it means the same as if it had said it should be thus *enforced*, or carried out, or thus effect should be given to it. It was created; the law had given it before; but it remained a dead letter, until some step was taken to apply it.

Again, it is sought to give a peculiar force to the word "used"—other property which has been *used* on the premises during the term, as if the lien were limited to other personal property which could be *used*, in the limited sense, as agricultural implements are used. But we believe it was em-

ployed in a large sense, and as avoiding other terms which would either too much widen or restrict the application of the lien. The *use* intended is only that which is incident to the nature and purposes of the occupation of the premises, the object of the tenancy. In this sense, the cloths and goods of these merchant tailors, were *used* for the purposes of sale, and for making up into garments for customers.

We come next to the leading question in the case, which is, when does the lien attach—whether at the commencement of the lease, or when the goods are brought upon the premises, which are, in effect, the same; or when the rent has become due or, whether, not until the suit is brought to give effect to it, and the attachment is laid.

The doctrine of distress does not give us an answer to the question. At common law, the landlord could levy a distress upon, or could distrain, any goods found upon the premises at the time of the taking, but he had not a *lien*. In all that is written upon the right of *distress*, we hear nothing of a lien, unless it be the lien by the distress, which is only the same as the lien by the levy of an execution, and then, properly speaking, the lien is merged, if there was one. A lien presents a different idea. When the law gives this to the judgment creditor, he *rests* upon the property as a security, before he lays his execution upon it. He that has this, has a right to the property (the land) as a security, from the time the lien attaches, at the rendition of the judgment, until he levies his execution. His lien exists *during the intermediate time*, so that the subject of it cannot be taken from him, Then the levy and sale is only giving effect to—enforcing the lien.

The same idea holds good of a mechanic's lien. He has it from the time of furnishing the work or materials, or the putting them into the building. It rests upon the house and holds it, so that it cannot be divested; but to enforce it, and have the subject of it applied to his payment, he brings his action. His lien is not then created, but it is judicially ascertained and declared, or, as it is termed, established. It

*existed* before, and rested upon the premises, and held them subject to his claim, and by the judgment, it is *applied* to his benefit. This is the notion of a lien, and it is only through such an idea of it, that it can hold property against other claims accruing subsequently.

The same virtue exists in these statute liens in which the possession does not pass, that existed in those at common law, when they were accompanied by possession. See Tom. Law Dict., tit. Lien. They hold the property in the same degree and force. "It (a lien) signifies an obligation, tie, or *claim*, annexed to, or attaching upon, any property, without satisfying which, such property cannot be demanded by its owner." And see 3 Bouv. Inst. 61–66, on the nature of a lien.

Whatever of this notion of a lien may be wanting in the common law idea, seems, at least, to be necessarily implied in the statutes giving it in different cases. A landlord (Code, section 1270,) shall have a lien for his rents upon the demised premises, and upon personal property, for the period of one year, after a year's rent falls due. This is to *continue* during a year, unless the term ceases, and then it continues six months. And so mechanic's and judgment liens *continue*, and none can take them away.

Then, to say that the lien holds only from the levying the attachment, is to destroy its very essence. It then amounts to an attachment only. And if it holds only from the time the rent becomes due, the promised aid is delusive; it is but security for a debt past due; and if it is payable at the end of the year, or of six months only, the property may be taken by another the week after one of these pay days, and the lessor has nothing for the remainder of his term. It seems to us that the very essence of this provision of the law is, to give the landlord a security for his *rent, as such,* and before hand; his rentage, as it may fall due, and not merely for a debt now due.

It is upon those things only for which his premises have been made use of. In the present case, it is upon only those

goods for the keeping, manufacture and sale of which his building is to be, and has been appropriated. This, at the commencement of the term, is devoted to the uses of manufacture, trade, or commerce, and there is no hardship in his having the prior right, a lien, a rest, upon the goods through the term. The case is free, too, from the objection that third persons may be ignorant of the true relations, for these may be ascertained by all.

But we may be met by the argument, that if this lien is such as above described, then every article sold by the retail trader from his rented store-room, is liable in the hands of the purchaser. Although we should not determine questions before they arise, it may not be improper to suggest a possible answer to this, as an *argumentum ab inconvenienti.* When the landlord rents, he knows to what kind of use or occupation his premises are to be put. In truth, they are in the main *built* with reference to certain kinds of occupancies. Then, when he leases his building, erected expressly for business, to a trader, of whose business he knows the very *essence* is that of *selling,* and whose *purpose* in leasing was that he *might sell,* does not the landlord give his consent to the departure of the goods in the ordinary course and manner of trade ? His lien is upon the stock, in *mass,* and not in *detail,* and he applies his lien to such part of this as he finds on the premises, and, perhaps, to what may be removed by fraud. But the purpose is different, and his expectation is different when he leases for a dwelling house. The furniture of a house-holder is not kept for sale. Such a line of discrimination seems dictated by common reason, and it is not necessary to give to the idea of the lien, an inflexibility which unfits it for the very purpose for which it was designed.

Judgment affirmed.

WRIGHT, C. J.—In my opinion, the property was only liable for the amount of rent due, at the time the sheriff levied the attachment and removed it from the premises.