GARNER *et al.* v. CUTTING *et al.*

1. **Landlord and tenant: LIEN: INJUNCTION.** Where a tenant leases property for a term of years, the lien of the landlord attaches at the commencement of the term, upon the property brought upon the demised premises, for the rent to become due or that will accrue during the entire term.

2. —— And the landlord may have an injunction to restrain the sale and removal of the property from the demised premises, by the tenant or his assignee. DAY, Ch. J., dissenting.

*Appeal from Pottawattomie District Court.*

FRIDAY, DECEMBER 8.

THE petition states that in July, 1869, plaintiffs leased to defendants a hotel known as the " Ogden House " then being erected in Council Bluffs, to be completed and delivered to the lessees and accepted by them on or before the 25th day of December, 1869, for the term of five years, at a rental of $10,000 per annum, which was to be paid monthly, in sums of $833.33, in advance. The lessees to pay $2,000, at the time of signing the lease as earnest money, which, with the exception of the first month's rent, was to be refunded to them on their taking possession under the lease. The lessees agreed to furnish said hotel in good, first-class style, and introduce therein all modern improvements and appliances in furniture necessary to the keeping a first-class house, and were particularly required to carpet the rooms in the second and third stories with Brussels carpet.

The petition sets forth that the house was completed and that the lessees accepted the same and took possession by the time stipulated in the lease, and that, on or before the 12th day of January, 1870, the house was furnished with hotel furniture to be used therein for hotel purposes, and a

memorandum thereof is attached to the petition; that on or about the 12th day of January, 1870, which was before one month of the term of the lease had expired, the defendants — the lessees — being largely indebted to divers persons, and a month's rent about to become due, they, defendants, with the design to hinder and delay creditors and prevent plaintiffs from collecting the rents about to become due on the leased premises, made a pretended bill of sale of all the furniture on the premises to one William Porterfield for the pretended consideration of $19,400; that said Porterfield had full knowledge of the object and purpose of such pretended sale; that there was no consideration whatever paid by or intended to be paid by him; that said bill of sale also apparently transferred the lease made by plaintiffs with a like fraudulent intent; that there was a confidential understanding that the hotel should be carried on the same as before the pretended transfer was made, and that the same was in fact so carried on.

It is also averred that when this suit was commenced there was $2,500 of rent then due; that the defendants refused to pay any rents then due and declared they would not pay any to become due in the future; that the defendants have no visible property except the furniture before mentioned, which is of the value of about $13,000, and that each of defendants is insolvent; that said defendants have and are still offering to sell the said hotel furniture to divers persons, to be removed from the premises and out of the State, and have threatened to remove the same out of the State and beyond the reach of the plaintiffs, and where the same would be rendered difficult, if not impossible, of identification. The petition prays an injunction to restrain the defendants from removing or disposing of the personal property in the hotel until the end of the term of the lease and until the rents shall all be paid, etc.

An order for an injunction was granted in vacation

and, at the next term of the court thereafter, defendants filed a motion to dissolve the injunction on substantially the following grounds:

1. There is no equity in the petition. 2. The plaintiffs have no lien upon the property used upon the demised premises for rents not yet due. 3. The plaintiffs have a complete and adequate remedy at law. This motion was sustained and plaintiffs appeal.

*Clinton, Hart & Brewer* for the appellants.

*Ross & Dailey* and *Sapp, Lyman & Hanna* for the appellees.

MILLER, J. — I. The first question which we notice is, whether the statute gives to the landlord a lien on the personal property used on the demised premises for rent *to become due.*

The section of the statute applicable to this question is 2302 of the Revision of 1860, and was section 1270 of the Code of 1851, and reads as follows:

"A landlord shall have a lien for his rent upon all crops grown upon the demised premises, and upon any other personal property of the tenant which has been used on the premises during the term, and not exempt from execution, for the period of one year after a year's rent, or the rent of a shorter period claimed, falls due; but such lien shall not, in any case, continue more than six months after the expiration of the term."

The language of this section does not specifically point out the time when the lien attaches. It does specify how long after the rent falls due it shall continue. The first case involving this question is *Grant* v. *Whitwell, Marsh & Talbott,* 9 Iowa, 152, in which Mr. Justice WOODWARD states the leading question in the case to be, " when does the lien attach, whether at the commencement of the

lease, or when the goods are brought upon the premises, which are, in effect, the same, or when the rent has become due, or whether not until the suit is brought to give effect to it, and the attachment is laid?" After a discussion of the question thus stated, the learned judge concludes in these words:

"Then to say that the lien holds only from the levying of the attachment is to destroy its very essence. It then amounts to an attachment only. And if it holds only from the time the rent becomes due, the promised aid is delusive; it is but security for a debt past due; and if it is payable at the end of a year, or of six months only, the property may be taken by another the week after one of these pay days, and the lessor has nothing for the remainder of his term. It seems to us that the very essence of this provision of the law is to give the landlord a security for his *rent as such and beforehand ;* his rentage as it may fall due, and not merely for a debt now due." This construction of the statute was affirmed in *Carpenter* v. *Gillespie,* 10 Iowa, 592.

In *Doane & Co.* v. *Garretson,* 24 Iowa, 351, it was said in the opinion that the lien of the landlord attaches upon goods *kept for sale* upon the premises as the rent accrues, and *not from the commencement* of proceedings to enforce it, and the previous cases are cited in support of this enunciation of the law. It was only necessary in that case to hold that rents which had accrued and were due were a lien on the property upon the demised premises *without the commencement of an action to enforce the lien,* and that therefore a mortgagee of personal property, of which he had taken possession, was protected in the payment of rent due when he took possession, against a creditor who had attached the mortgagee as a garnishee for the surplus remaining after the payment of the mortgage. The expression of the law, as used by the learned judge, was sufficient in that case, and was probably taken from the reporter's head

note in *Grant* v. *Whitwell et al.*, 9 Iowa, 152, which is clearly incorrect. The very point decided in that case was, that the landlord did not have, under the statute, a lien simply from the time he commenced his action, nor yet that his lien was limited to and attached only upon the maturity of rent, but that this lien given by the statute was a security which existed "beforehand" *for the payment of the rent as it became due;* not that the rent must first fall due before the statute afforded any security for its payment but that it was a present security for its payment when it became due — an existing and continuing security that the rent should be paid when and as it became due. This question was directly involved, for the plaintiff was claiming that he had a lien for rent not due when he brought his action, but which had fallen due after the same was brought, and the decision of the court was in his favor. WRIGHT, C. J., dissenting, and holding that the property was only liable for the *amount* of rent due at the time the attachment was levied and the property removed thereunder.

The doctrine of *Grant* v. *Whitwell, Marsh & Talbott* has been approved and affirmed in *Carpenter* v. *Gillespie*, 10 Iowa, 592, *Doane & Co.* v. *Garretson, supra*, and remains still as the doctrine of this court. We are satisfied, moreover, that the true and just construction of the statute is as announced in *Grant* v. *Whitwell et al., supra*, and that there is, therefore, no good reason for disturbing the decision in that case.

Appellee's counsel insist that the property used on the demised premises is only liable as the rent accrues. That it is only subject to be *attached* and made liable to the payment of the rent as it falls due, is certainly correct; but if the rent is a lien on the property before the same falls due, the property is *security* for the payment of the rent prior to maturity, and becomes liable for the payment *as* it falls due. Hence arises the question of the landlord's remedy in

case of a fraudulent attempt to destroy this security on the part of the lessees.

II. Have the plaintiffs a complete and adequate remedy at law?

The law affords a remedy only for the enforcement of the lien against property for rent *due*. While the landlord has a lien for his rent on the personal property of the tenant used on the premises and not exempt from execution, he cannot enforce that lien at law until the rent falls due. He can only enforce it against the property to which the lien attaches and which remains on the demised premises, or can be found and is capable of identification. For the threatened injuries to their security complained of in plaintiff's petition, there is no remedy at law.

It is well settled that a mortgagee may have an injunction to prevent any commission of waste to the mortgaged premises which may impair the mortgage security. *Brady* v. *Waldron*, 2 Johns. Ch. 148; *Robinson* v. *Preswich*, 3 Edw. 246; *Salmon* v. *Clagett*, 3 Bland. 121, 180.

So, also, after land of an insolvent debtor has been attached for a debt in a suit at law, an injunction has been granted by a court of chancery to restrain the debtor from committing waste. *Camp* v. *Bates*, 11 Conn. 51; and it has been held, that after a sale on execution, during the time allowed by statute for redemption, an injunction will be allowed at the suit of the purchaser to restrain the defendant from committing waste. *Boyd* v. *Hoyt*, 5 Paige, 65; *Bank of Utica* v. *Mersereau*, 7 id. 517.

A threat to commit waste is sufficient ground for an injunction though no waste has actually been committed. *Soudon* v. *Warfield*, 5 J. J. Marsh. 196; *Duvall* v. *Waters*, 1 Bland. 569.

Upon the same principle that a court of equity will interfere by injunction to prevent the commission of waste by a mortgagor, at the suit of a mortgagee, it would seem

that the same relief would be afforded to a landlord, having a lien on personal property for his rent, to restrain a destruction or waste thereof by the tenant. In the case of a mortgage of personal property, where the debtor is about to remove it beyond the reach of his creditor, the mortgagee may have an injunction to prevent its removal. 1 Hilliard on Mortgages (3d ed.) 227, and cases cited in note 1. The reason assigned for granting an injunction in such case is, that " otherwise a fraudulent mortgagor might, at his pleasure, deprive the creditor of all benefit of his mortgage." We can see no good reason why a landlord, having a lien for rent, is not equally with a mortgagee of chattels, entitled to the same remedy to protect him in his security and to prevent a fraudulent tenant from depriving him of all benefit of his lien. A mortgagee holds the mortgaged property as security for his debt. He is entitled to the aid of a court of equity to preserve and protect such security against the wrongful or fraudulent acts of the mortgagor which may impair his security. His lien exists by virtue of a contract with the mortgagor. So a landlord has a lien, a security for his rent, upon the personal property on the premises, which exists by virtue of the statute. This is the only difference, that the lien in one case arises solely upon contract, in the other it exists by statute which enters into and becomes part of the contract. There can be no good reason why the landlord is not as much entitled to have *his* security protected against the wrongful and fraudulent acts of his tenant, which will result in impairing and destroying his security, as exists in favor of a mortgagee of either lands or chattels. He cannot sue for his rent before it falls due, any more than a mortgagee can foreclose before the maturity of his mortgage, and the mischief to be prevented is the same in each case, viz.: the fraudulent depreciation of or injury to the security; and on principle both credi-

·tors are alike entitled to the relief which a court of equity alone can afford in such cases.

Had the lessees in this case made and delivered to the plaintiffs a chattel mortgage upon the personal property in the hotel to secure the payment of the rent as it should fall due, there could remain no doubt of the existence of plaintiffs' *lien* PRIOR to the rent falling due, nor would there be any doubt of plaintiffs' right to an injunction to prevent the property from being carried out of the State. Holding in accord with the rule in *Grant* v. *Whitwell, Marsh & Talbott, supra,* that the lien for rent attaches at the commencement of the lease, or when the property is brought upon the demised premises, it seems clear that the landlord is, under the statute, placed in substantially the same position as to his equitable rights and remedies, as if he held a mortgage on the property to secure the payment of the rent as it became due. The equitable right of each to the aid of a court of chancery to prevent the fraudulent removal of the property, on which rests the lien, out of the State or beyond the reach of the creditor is the same. The same principle upon which relief is afforded to one is equally applicable to the other.

It is true that the landlord's remedy, for the collection of his rent and the enforcement of his lien, is statutory and must be pursued when the object is to enforce the lien and collect the rent due. Rev. of 1860, § 2303; *Merrit* v. *Fisher,* 19 Iowa, 354. But, as held in the case cited, this statutory remedy is given for no other purpose than the recovery of rent due. Now the remedy sought, in the case before us, is relief against the alleged frauds of defendants whereby plaintiffs' security for a debt not then due was about to be injured or destroyed. It is not the remedy provided in the statute that is invoked, but a remedy which a court of equity always delights to give, viz.: one which prevents the commission of a fraud upon one party by the other, and it will always do so when, as in

this case, the law does not afford a full and adequate remedy.

The order of the court below dissolving the injunction is

Reversed.

Day, Ch. J. (dissenting). — I do not concur in the conclusions of the opinion just announced, and desire briefly to set forth the grounds of my dissent. The principal question involved is this: when a tenant leases property for a term of years, does the lien of the landlord at the commencement of the term attach upon the property brought upon the demised promises for the rent to accrue during the entire term?

The majority opinion answers this question in the affirmative. It is based upon the prior adjudications of this court. I propose, therefore, first, to consider how far those adjudications definitely settle the question. In the case of *Grant* v. *Whitwell, Marsh & Talbott*, 9 Iowa, 152, it was held, that property levied upon by attachment, and removed from the demised premises, was still affected by the lien of the landlord for rent accruing subsequently. Wright, Ch. J., dissented, although no dissenting opinion seems to have been filed. The case of *Carpenter* v. *Gillespie*, 10 Iowa, 592, is reported in the appendix in less than four lines, and does not show that the question here presented was involved or received attention. Upon the contrary, as that opinion was written by Mr. Justice Wright, who, in the subsequent case of *Nesbitt* v. *Bartlett*, 14 Iowa, 485, adhered to his former opinion in *Grant* v. *Whitwell*, the only reasonable inference is, that this question was not involved. In the case of *Doane & Co.* v. *Garretson*, 24 Iowa, 351, the defendant took possession of goods under a chattel mortgage, and was afterward served with garnishee process. At the time he took possession of the goods, a certain amount of rent was due upon a store in which the

goods were kept. The defendant paid this rent after service of the garnishee process. It was held that the payment was proper, because the lien of the landlord attaches *as the rent accrues, and not from the commencement of proceedings to enforce it.* This case is no authority for the doctrine that the lien exists for rent not accrued. The majority opinion, therefore, rests alone upon the doctrine of the case of *Grant* v. *Whitwell et al.*, announced by a divided court. It is conceded, in the opinion just announced, that the language of the section, establishing the landlord's lien, *does not specifically point out the time when the lien attaches.* In this fact alone exists, in my judgment, a strong argument against the construction sought to be placed upon it. Ordinarily, liens do not exist by mere operation of law for debts to accrue in the future. The existence of such a lien must, from its nature, be attended with many important consequences. When, therefore, the legislative mind was directed to this subject, and a lien was provided in favor of the landlord, without prescribing the time when it was to attach, the reasonable inference is, that it was intended that it should be governed by the usual and ordinary rules applicable to kindred subjects. It was easy for the legislature to declare that the lien should attach at the commencement of the term for rents to become due during the term. Not having made such declaration, I can only infer that the legislation on the subject was not intended to have that effect. If the policy of the law is alone to subserve the interests and protect the rights of landlords, the construction of the law adopted in *Grant* v. *Whitwell*, and followed in the majority opinion, would receive some support. But, aside from this construction, the landlord is placed upon a much higher plane than ordinary creditors. They are required to give bond for the use of the debtor before they can invoke the frequently harsh and oppressive process of attachment. He avails himself of this process without

executing a bond, and is only required to file an affidavit with the proper clerk or justice, that the action is commenced to recover rent accrued within one year previous thereto, upon premises described in the affidavit.

I do not say that these provisions are unnecessarily severe. It may be that they are dictated in wisdom, and are promotive of the best interests of society. But it does seem to me that there can be but little necessity or excuse, for extending, by judicial construction, beyond their natural import, provisions so harsh and summary.

If the lien, to the extent claimed by the majority, exists, it exists in consequence of the statute, and enables the landlord effectually to prevent the sale of any property used upon the premises during the term. The object of the sale is not material. The lien exists as well when the purpose of the sale is *bona fide* as when it is fraudulent. A sale for any purpose would have a tendency to divest the lien, and hence infringes upon the landlord's rights. The tenant, having a valuable piano, the luxury of which he finds himself unable longer to support, could not sell the same with a view to using the proceeds in support of his family. The lien which attaches at the commencement of the term compels him to keep it upon the leased premises, throughout the term, however long it may be, for the security of the landlord for rents which may accrue. It is useless to dilate upon the restraints of trade, the inconvenience, the hardship, the positive oppression which such a doctrine involves.

The building for which rent is claimed in the case at bar is a hotel, and was leased for five years, at a monthly rent of $833.33⅓, being $10,000 a year, or $50,000 for the entire term. The tenant brought upon the premises furniture and other things necessary for the conduct of his business, of the alleged value of $13,000. Now, if any commercial revulsion, or change in the center of business, should render such an amount of furniture unnecessary and

even useless, under the doctrine of the majority opinion the tenant could sell no portion of it. The lien of the landlord holds it like the "gripe of a giant," until the monthly accruing rent becomes due, when it may be sold for any existing delinquency. And if the value of the furniture had been $50,000, still it would all be held in the relentless grasp of this insatiate lien. The evil consequences of the doctrine I am now considering are not confined to a class of cases such as this record involves. A thrifty farmer rents a large farm for the term of ten years, at a yearly rent of $1,000. At the commencement of the term he brings upon the demised premises wagons, cultivators, reaping machines, and other improved implements of husbandry, horses, mules and cattle, of the aggregate value of $10,000. The moment they are brought upon the premises, and the term commences, the landlord's lien, for rents to accrue during the whole term, amounting to $10,000, attaches. If he becomes tired of his reaper or cultivator, he is powerless to dispose of it. If he concludes that the number of his horses, mules or cattle is in excess of his wants, he cannot sell a horse, or a mule, or a steer, without his landlord's consent. Any attempt to reduce the value of the property upon the premises below the aggregate amount of rents to accrue during the whole term, entitles the landlord to invoke the injunctive process to restrain such sale, and if it is not put in operation against him, he is indebted, not to the justice and reasonableness of the law, but to the moderation of his landlord. I am unable to conceive of a doctrine which would more effectuary reduce a respectable and highly useful class of citizens to a condition of dependence and serfdom. Again, a merchant rents a store for ten years at $2,000 a year, and places in it a stock of goods worth $20,000. Misfortunes overtake him and he becomes unable to prosecute his business. Yet, by a sale of his stock entire, he might rescue himself from financial ruin. But the landlord's

lien interposes. He is compelled to leave his stock upon the premises, until, by an annual tithing, it is absorbed for the payment of rent.

Law is declared to be the perfection of human reason. May we not well doubt the perfection of that reason which leads to consequences so oppressive, so detrimental to the interests of society, so opposed to every reasonable sense of justice? In my opinion the lien of the landlord in this case *did not* attach upon the furniture brought into the demised premises, for the sum of $50,000, the rent reserved for the whole term. Upon the contrary, in my judgment, as the rent was payable monthly in advance at the commencement of each month, the landlord's lien attached for one month's rent.

Entertaining these views, I think the injunction was properly dissolved, and that the judgment below should be affirmed; but the majority say it shall be

Reversed.