STATE OF MISSOURI TO THE USE OF J, H. VETTE, Appellant, v. J. B. SHEVLIN ET AL., Respondents.

St. Louis Court of Appeals, December 7, 1886.

1. LIENS—STABLE KEEPERS.—A stable keeper, under the statute, has a lien on the animal boarded by him so long as it remains the property of the owner who contracted the debt, or of his vendee with notice.

2. —— When the animal has been permanently removed from the stable, with or without the stable keeper's consent, the lien is lost as to those who, in good faith and without notice, obtain an interest therein.

3. —— EVIDENCE.—The evidence as to whether the horse was still boarding at the stable when it was mortgaged being conflicting, it is error to exclude evidence tending to show that the mortgagee acted in good faith and without notice.

APPEAL from the St. Louis Circuit Court, AMOS M. THAYER, Judge.

*Reversed and remanded.*

MUENCH & CLINE, for the appellant: If possession of personalty, on which there is a lien, is temporarily parted with and another lien attaches meanwhile, the former does not revive against the latter. Schoul. Pers. Prop. 497; *Godin v. Lond. As. Co.*, 1 Burr. 489; *Spring v. Ins. Co.*, 8 Wheat. 268.

E. T. FARISH, for the respondent: As the result of the testimony went to show that the horse was taken from the stable on the pretext of being returned, and was not so returned, it might as well be contended that if the property was obtained by force or fraud, that such parting with possession would defeat the lien. *Bigelow v. Henton*, 4 Denio, 496.

THOMPSON, J., delivered the opinion of the court.

This case involves a conflict between a stable-keeper's lien and a chattel mortgage. The action is upon a bond given under the sheriff, marshal, and constable's act, under circumstances which will be hereafter stated.

The property in respect of which the controversy arose, a horse, wagon, and harness, belonging to one Albrecht, a retail butcher in St. Louis, who had the same boarded in the defendant's stable, using the same during the day in his business with the defendant's consent, just as all business men who have their horses boarded do. On the twenty-ninth of April, 1885, Al. brecht made a chattel mortgage of this and other property to the relator to secure a loan of money, which mortgage was duly recorded. It does not appear that at the precise point of time when the mortgage was delivered, the horse was in the actual physical custody of the defendant. But there was substantial evidence to the effect that at that time the horse was boarded in the defendant's stable, and was used by Albrecht during the day in his business. Albrecht testified that he had, previous to that time, rented stable room of one Miller, and had removed the horse to Miller's stable; but the defendant introduced Miller's son who testified that, while Albrecht had, previous to that time, rented the stable room, he had not in fact brought the horse there until some time after the date at which the chattel mortgage was given. The relator also introduced Samuel Bartholomew, who testified that he was in the relator's employ at the time when the loan was made; that he went out to look at the property, and that he found the horse, wagon, and harness in front of Albrecht's shop. The defendant's evidence tended to show that Albrecht continued to use the horse, wagon, and harness as he had done before, boarding the horse in the defendant's stable, until the fifth of May, when he took them out as

usual, ostensibly to use them in his business, and failed to return them, but took them to another stable. After demanding of Albrecht that he should either pay the bill, amounting to $20.70, as the defendant claimed, which was due for the boarding of the horse, or return the property, both of which Albrecht declined, the defendant brought an action of replevin for the property, and, the property having been levied upon by a constable under the writ of replevin, the relator in the present action filed a claim under the sheriff, marshal, and constable's act, claiming the property as his by virtue of the chattel mortgage, the conditions of the same having been broken. Thereupon the defendant elected to give bond as provided for in the statute, upon which being done the constable retained the property; and it was afterwards sold under an execution in the defendant's lien suit, and the defendant became the purchaser. The present action is brought upon the bond thus given.

The statute creating and defining the lien of stable keepers reads as follows: "Every person who shall keep, board, or train any horse, mule, or other animal, shall, for the amount due therefor, have a lien on such animal, and on any vehicle, harness, or equipment coming into his possession therewith; and no owner or claimant shall have the right to take any such property out of the custody of the person having such lien, except with his consent or on the payment of such debt; and such lien shall be valid against said property in the possession of any person receiving or purchasing it with notice of such claim." Rev. Stat., sect. 3196.

I.   The relator put the question to the witness, Bartholomew, what, if any, information the relator had before making this loan in reference to any claim for board upon this property. This question the court refused to allow the witness to answer, and an exception was saved. We think that this ruling was erroneous. Some effect must be given to the concluding words of the

statute, ''And such lien shall be valid against said prop-
erty in the possession of any person receiving or pur-
chasing it with notice of such claim.'' We hold the
statute to mean that if the stable keeper voluntarily and
entirely parts with the possession of the horse, as by
allowing it to be removed to another stable for board, he
thereby loses his lien as against any person who may
thereafter purchase or become the mortgagee of it with-
out notice of his claim. If, therefore, Albrecht's testi-
mony was true, that prior to the date of the making of
the chattel mortgage in this case, he (Albrecht) had,
with the consent of the defendant, removed the horse to
Miller's stable, the relator had the right to show that he
had no notice, at the time of making the mortgage, of the
defendant's claim against Albrecht for the board of the
horse.

II.  The relator requested the court to instruct the
jury as follows, which the court refused: ''The court
declares the law to be, that if it appear from the evi-
dence that at the time when A. Albrecht gave to relator
the notes and mortgage in evidence, and received from
the relator the money thereon, the horse, wagon, and
harness were, with the consent of the said Shevlin, in
the possession of said Albrecht, and the relator had not
then any notice of any claim of lien thereon by said
Shevlin, then the finding herein must be in favor of
relator.''

We are of opinion that the court committed no
error in refusing the instruction above set out. In
the view we take of the meaning of the statute, the lien
thereby conferred is not dependent upon an actual
physical custody by the stable keeper at every moment
of time. We think that the lien conferred by the stat-
ute subsists, even as against third persons without
notice, while the horse is boarded in the stable of the
lienor, although it may, with his consent, be used during
the day by the owner in his business. To hold other-

wise would be to construe the statute so as to deprive stable keepers of the protection which the legislature probably intended to give them ; since, as is well known, in most cases where horses are boarded, the owner is allowed to use them in his business during the day. This being so, the statute could not have intended to allow the owner to destroy the lien of the stable keeper while having the possession of the horse on the street during the day, by selling or mortgaging it to a stranger without notice of the lien. On the contrary, we are of opinion that every person is bound so far to take notice of the statute, that, when he is about to become the purchaser or mortgagee of a horse found upon the street in the custody of its owner, it is incumbent upon him to make inquiry as to the place where the horse is boarded, and whether anything is due for its keeping. There is no greater hardship in this rule than there is in the general rule in respect of purchases of personal property, that the purchaser gets no better title than the seller has.

III. We are also of opinion that if the stable keeper voluntarily parts with the general custody of the horse before the amount due for the keeping of the horse is paid, as by allowing its owner to remove it to another stable for board, he thereby loses his lien, as against third persons having no notice of his claim. We are equally clear, in conformity with the views expressed by us in the case of *Heaps v. Jones* (*post*, p. 617), that where the possession of the horse is tortiously obtained from the stable keeper by the owner or by any one else, the lien of the stable keeper. is not thereby destroyed, even as against third persons having no notice of his lien, and that he may in such case maintain replevin therefor. The case of *McCreery v. Muench* (7 Mo. App. 589), in so far as it conflicts with this view, is overruled. If, therefore, on another trial it should be found that prior to the delivery of the chattel mortgage

in evidence, Albrecht had, with the consent of the defendant, removed the horse to another stable, and that the plaintiff had no notice of the defendant's lien, the verdict and judgment ought to go in favor of the plaintiff ; but it should go in favor of the defendant if such removal was done fraudulently, or without the consent of the defendant, unless the defendant, after knowledge of the removal, by some distinct affirmative act, or by gross laches, waived his right of lien.

IV. We are also of opinion that the trial court erred in admitting in evidence, against the objection of the plaintiff, the record in the replevin suit between the defendant and Albrecht. This included the judgment, the special execution issued thereunder, and the sheriff's return thereon, showing the amount for which the horse was sold. The plaintiff in this action was not a party to that suit ; so far as he is concerned it was *res inter alios acta.* The defendant in this proceeding is bound to establish his right of lien as against the plaintiff by independent evidence, and not by a record which is not binding on the plaintiff, a stranger to the same. This case was tried before a jury and it is plain that this record might have been prejudicial to the plaintiff, especially upon the question of damages, assuming that he should make a case entitling him to recover.

The judgment will, for these errors, be reversed and the cause remanded. It is so ordered, with the concurrence of all the judges.