Filed June 26, 1891.

---

No. 227.

## WALLS v. LONG ET AL.

LIEN.—*Livery-Stable Keepers.—Removal of Animal.—Replevin.*—A livery-stable keeper is entitled to a lien for the feed and care of a horse boarded at his stable, and the lien is not divested by reason of the fact that the horse is used more or less each day. If the horse be removed without the livery-stable keeper's knowledge, or consent, he may maintain an action of replevin for the purpose of enforcing his lien.

SAME.— *When it Attaches.*—The lien attaches to the animal as the care and feed are being bestowed, and does not hold simply from the time the board becomes due or payable.

· From the Marion Superior Court.

*W. B. Walls* and *G. L. Walls,* for appellant.

*L. E. Reinhold* and *D. K. Partlow,* for appellees.

NEW, C. J.—This was an action commenced before a justice of the peace by the appellant against the appellees to recover possession of a horse alleged to be of the value of sixty dollars.

Before the justice the judgment was for the appellees. In the superior court, special term, to which the cause went by appeal, there was a trial by the court, with finding and judgment for the appellees.

The only error assigned in this court by the appellant is the affirming by the court below, in general term, of the judgment of the court in special term.

The error assigned in general term of the court below was the overruling of the appellant's motion for a new trial.

The grounds of the motion for a new trial were that the decision of the court was not sustained by sufficient evidence, and was contrary to law.

The evidence is in the record, and upon that arise the questions of law discussed by counsel.

On the 23d of November, 1888, the appellant was the owner of the horse in controversy, and on that day hired him to Joshua Beal for a period of 107 days from that date for $13 per month, to be paid on the first day of each month, the same to be used in the payment of the board-bill of said horse. Beal contracted with the appellees, who were keepers of a livery and feed stable, to board said horse at $13 per month, and under this contract the appellees fed and cared for the horse at their stable from the 24th of January, 1889, to March 22d, 1889. The first month's board was paid by Beal, but nothing was paid thereafter.

Beal was a paper-hanger, and used the horse every day more or less, either going to the stable for the horse himself or sending his hired man. On the 22d of March, 1889, the hired man took the horse from the said stable, after he was hitched up as usual by the appellees, and drove him away as he had been in the habit of doing.

The horse was not returned to the appellees' stable, Beal engaging board for him on that day at the stable of one Hadley.

On the fifth day thereafter the appellees, claiming to have a lien on the horse for feed and care given him and not paid for, replevied him, before a justice of the peace, from said Beal and Hadley; and on the next day the horse was replevied from the appellees by the appellant, before a justice of the peace, with the result already stated.

The contention of the appellant is, that at the time of the institution of the appellant's suit, the appellees did not have a valid and subsisting lien upon the horse for the feed and

care bestowed on him by them as livery-stable keepers; that the statute required the appellees to have a continual, actual and exclusive possession of the horse in order to maintain a lien; that when they permitted Beal to take the horse out of their stable and use him in his business, they waived the lien given them by statute. This, as the case is presented upon the evidence, is practically the position taken by counsel for the appellant.

In common law parlance the word "lien" is somewhat indefinitely used, as including every species of special property which one may have in goods, the general ownership of which is in another. But it was originally and more appropriately used to signify the right of detention which artisans and others who had bestowed labor upon an article, or done some act in reference to it, had in some instances, until reimbursed for their expenditures and labor bestowed thereon. More comprehensively defined, a lien at common law is the right which one person possesses in certain cases of detaining property placed in his possession belonging to another, until some demand which the former has is satisfied. The common law lien, covered, among other cases, those of tradesmen, carriers, innkeepers, farriers and mechanics, who by their skill and labor had imparted additional value to the goods. The common law lien existed only in cases where the party entitled thereto had either actual or constructive possession, and the lien was lost, as we find the rule generally stated in the books, where the party entitled to it, without trick or fraud upon him, voluntarily parted with the possession of the goods.

At common law one who merely furnished food and took care of an animal, as a livery-stable keeper, had no lien on the property without a special agreement to that effect, but in modern times liens in such cases have frequently been given by statute.

The lien claimed by the appellees in this case is given by section 5292, R. S. 1881, which reads as follows:

." The keepers of livery-stables, and all others engaged in feeding horses, cattle, hogs, and other live-stock, shall have a lien upon such property for the feed and care bestowed by them upon the same, and shall have the same rights and remedies as are provided for those persons heretofore having, by law, such lien in the act to which this is supplemental."

The act to which this is supplemental was that of May 20th, 1852, which gave to the person therein named a right to sell at public auction the property in the act specified for the payment of their charges or liens on said property. Section 5304, R. S. 1881.

It is very plain that under these statutes the owner's right of unqualified possession is suspended until the lien or charges are satisfied.

It has been decided that, even at common law, the lien may continue, as between the claimant and the owner, after the possession is changed, if there was no intention on the part of lien-claimant to waive the right.

In *Allen* v. *Spencer*, 1 Edm. Sel. Cas. (N. Y.) 117, it is said : " It is only between the claimant and third persons that continued possession is essential, because possession by the owner might enable him to defraud others ignorant of the lien. As between the owner and the holder of the lien, possession is by no means essential, except when, by surrendering the possession, the claimant can be fairly understood to have surrendered his lien ; and then the question is not whether he has yielded his possession, but has he voluntarily surrendered his lien? Has he agreed to surrender it?—for until he has, it will not be in the power of his debtor to deprive him of it." See, also, *McFarland* v. *Wheeler*, 26 Wend. 467 ; *State* v. *Shevlin*, 23 Mo. App. 598 ; *Allen* v. *Smith*, 104 E. C. L. 636 ; *Smith* v. *Marden*, 60 N. H. 509 (512) ; *Hartman* v. *Keown*, 101 Pa. St. 338 ; *Beall* v. *White*, 94 U. S. 382 ; *Grant* v. *Whitwell*, 9 Iowa, 152 ; *Holderman* v. *Manier*, 104 Ind. 118.

In the case of *Young* v. *Kimball*, 23 Pa. St. 193, a case of

replevin very much like the present in its controlling facts, the court said : " Our act of Assembly gives a lien to both innkeepers and livery stable keepers for the expense of keeping horses ; and it may be possible that this was not intended to change the common law right of innkeepers as such, and that, at common law, a lien would not, under these circumstances, be sustained.  But it was not at all as innkeeper that the plaintiff became entitled to assert this claim against the defendant, but as a livery stable keeper ; for it was under an arrangement totally different from that which takes place in the entertainment of strangers and travellers. It was a necessary part of that arrangement that the horses should be delivered to the defendant as they were needed, and this is part of the ordinary course of business of livery-stable keepers, and therefore must be consistent with the right of lien that belongs to the occupation.  We see no evidence that the defendant hired any part of the plaintiff's stable, or had any other control of the horses than is common where the owners of horses at livery has his own driver to attend to them.  This circumstance does not affect the right of the lien."

We think this case, as also those last before cited, clearly sustains the view that the appellees did not lose or waive their lien by permitting the horse to be used by Beal in his business.

When it is considered to what extent livery-stables are made use of by the public as places most suitable, in many respects and instances, for the boarding of horses in daily use, it is difficult to believe that the legislative intent or meaning is that which is contended for by the appellant's counsel.

If the keepers of such stables were intended to be benefited by the statute only where the animal being fed and cared for was not taken from the stable and used by the owner or his family, at all, the benefits both to the keepers and owners would be slight, for few persons would consider

such an arrangement either convenient or economical. It is obvious, in our opinion, that such is not the meaning of the statute.

The appellees had no knowledge or reason to believe or suspect that the horse would not be returned as usual to the stable when last taken out.

While the horse was being boarded by the appellees the appellant was at their stable and expressed himself as pleased with the care the horse was receiving. The appellees were not required to announce on each occasion that the horse went out that they had a lien upon him, and that therefore he must be returned.

There was nothing in the contract between them and Beal inconsistent with the existence of the lien, nor had it been terminated by the payment of the board. There is nothing in the record from which it can be inferred that the appellees intended to waive their lien, nor does the evidence furnish any ground whatever for the belief, if it exists, by either the appellant or Beal, that there was any such intent.

It is further insisted by the appellant's counsel that inasmuch as the horse was taken from the stable the last time, on March 22d, two days before the second month's board became due, therefore there was no lien that could be enforced.

This view is not sound. It would destroy the very essence of the lien. If it holds only from the time the board becomes due or payable, it would be simply a security in effect for a debt past due. In our opinion the statute attaches the lien to the animal as the care and feed are being bestowed.

The point is made by appellant's counsel that when the appellees replevied the horse from Beal and Hadley no demand was made. Without expressing any opinion whether a demand would have been necessary in that case, it is sufficient to say that this action is entirely distinct and independent of that, although the same horse is involved.

The judgment is affirmed, with costs.

Filed June 10, 1891.