(65 N. W. Rep. 672.)

---

## THOMAS H. WELSH *vs.* O. G. BARNES.

Opinion filed November 7th, 1895.

Stable Keeper's Lien.

> The lien given to a stable keeper by § 5486, Comp. Laws, is not lost, even as to an attaching creditor, because the horse is temporarily in the possession of the owner when it is levied on, who is using it in the usual manner; it being the purpose of the owner to return the horse to the stable as soon as he finishes his temporary use of it; the arrangement under which the horse is being boarded being still in existence at the time the levy is made.

Appeal from District Court, Cass County; *McConnell*, J.

Action by Thomas H. Welsh against O. G. Barnes, sheriff. Judgment for plaintiff, and defendant appeals.

Affirmed.

*John E. Greene*, for appellant.

*Ball & Watson*, for respondent.

CORLISS, J. This case presents a contest between a stable keeper claiming a lien on a mare for the feeding and care of her, and an attaching creditor, whose attachment was levied on the mare while she was temporarily in the possession of the owner thereof. The plaintiff, who was the stable keeper, brought replevin against the defendant, who was the sheriff by whom the levy was made. The defendant sought to justify under the writ. At the time he made the levy there was owing the plaintiff, for feeding and caring for this mare, something over $50. Plaintiff claimed a right to the possession of the mare under the statutory lien given him by § 5486, Comp. Laws, for the amount of this bill.

The contention of defendant is that, as to the creditors of the owner of the mare, the lien was lost by allowing the owner to take the mare temporarily from the stable to drive. It is undisputed that he had not taken her permanently from the possession of the plaintiff, nor did any one so understand. The mare was, when seized by defendant, simply in his possession for a short time, to drive her about as is customary in such cases; and it was his purpose to return her to the stable of plaintiff, as he had done before. The statute giving the lien provides as follows: "Any farmer, ranchman or herder of cattle, tavern keeper, or livery stable keeper, to whom any horses, mules, cattle or sheep shall be entrusted for the purpose of feeding, herding, pasturing or ranching, shall have a lien upon said horses, mules, cattle or sheep, for the amount that may be due for such herding, feeding, pasturing or ranching, and shall be authorized to retain possession of such horses, mules, cattle or sheep until the said amount is paid; provided, that these provisions shall not be construed to apply to stolen stock." Comp. Laws, § 5486. It is obvious that this statute must be construed in the light of the usages of business, and the customs of people who place horses in stables to be cared for by the proprietor of such stables. It is always understood that the owner will, from time to time, take temporary possession of the horse, returning it to the stable after his temporary use of the animal has ceased. If the owner, with the consent of the stable keeper, removes the horse permanently from his possession, the lien is gone. Such was the case of *Ferriss* v. *Schreiner*, (Minn.) 44 N. W. 1083. If the circumstances of the case warrant the inference that the owner in the case cited had come to take his horse for good, then, if the plaintiff had assented to this his lien would have been gone. But the mare, in the case at bar, when she was taken out for a drive, was being boarded at plaintiff's stable by the month; and it was not the intention of either party to terminate this arrangement at the time she was attached. Under the facts of the case at bar, it is obvious that the plaintiff's lien was not lost or impaired at the time the defen-

dant, as sheriff, seized the mare under attachment against the owner. The authorities are unanimous on this point. *Walls* v. *Long*, (Ind. App.) 28 N. E. 101; *Caldwell* v. *Tutt*, 43 Am. Rep. 307; *State* v. *Shevlin*, 23 Mo. App. 598; *Young* v. *Kimball*, 23 Pa. St. 193, There was not such a loss of possession as would defeat the lien as to third persons. *Caldwell* v. *Tutt*, 43 Am. Rep. 307; *State* v. *Shevlin*, 23 Mo. App. 598. Said the court in this last case: "In the view we take of the meaning of the statute, the lien thereby conferred is not dependent upon an actual, physical custody by the stable keeper at every moment of time. We think that the lien conferred by the statute subsists, even as against third persons without notice, while the horse is boarded in the stable of the lienor, although it may, with his consent, be used during the day by the owner in his business. To hold otherwise would be to construe the statute so as to deprive stable keepers of the protection which the legislature probably intended to give them; since, as is well known, in most cases where horses are boarded the owner is allowed to use them in his business during the day. This being so, the statute could not have intended to allow the owner to destroy the lien of the stable keeper, while having the possession of the horse on the street during the day, by selling or mortgaging it to a stranger without notice of the lien. On the contrary, we are of opinion that every person is bound so far to take notice of the statute that, when he is about to become the purchaser or mortgagee of a horse found upon the street in the custody of its owner, it is incumbent upon him to make inquiry as to the place where the horse is boarded, and whether anything is due for its keeping. There is no greater hardship in this rule than there is in the general rule in respect of purchases of personal property,—that the purchaser gets no better title than the seller has." The case of *Manufacturing Co.* v. *Morgan*, (Neb.) 10 N. W. 462, is not in point. The statute construed in that case is radically different from ours, and the stable keeper was not relying on his lien, but on a seizure under an ordinary execution issued upon a mere judgment for money.

We have decided this case upon the theory that neither the sheriff nor the attaching creditor knew of plaintiff's lien. We agree with the court in *State* v. *Shevlin, supra,* that ignorance of the lien does not give the creditor any right to insist that it does not exist as to him.

It is also urged that the complaint did not state a cause of action. While, perhaps, it is not as full and explicit in its language as it might have been made, yet we regard it as sufficient, as against an attack, not upon demurrer, but for the first time upon the trial.

The judgment is affirmed.   All concur.