M. WALLIN, Appellee, v. W. T. MURPHY & Co., Appellants.

Landlord's Lien: INJUNCTION TO PROTECT: *Where tenant is solvent.* Where a tenant under an unexpired lease providing a monthly rental began to deplete the stock of goods in the leased building by shipping them to a store in another town owned and operated by the tenant and another, the landlord was entitled to an injunction restraining the removal of the goods to the prejudice of his lien, though the tenant was not insolvent, since, the rent not being due, he had no remedy at law for the protection of his lien.

*Modification of injunction.* Where, at the time a landlord obtained an injunction against his tenant to restrain the removal of goods from the leased premises to the prejudice of the landlord's lien, it appeared that the goods were worth from $3,000 to $4,000, and the lease had only three years and four months yet to run at a rental of $18 per month, the injunction was properly modified so as to enjoin defendant from reducing the stock in the store below $1,000 in value.

*Appeal from Wright District Court.*—HON. J. R. WHIT-AKER, Judge.

WEDNESDAY, OCTOBER 22, 1902.

SUIT in equity to enjoin defendants, who are plaintiff's tenants, from removing property from the leased premises. A temporary writ of injunction was granted as prayed. Thereafter defendants appeared, and moved to

dissolve the injunction, and by agreement the hearing of the motion was treated as final, resulting in a modification of the temporary writ, and a decree prohibiting defendants from reducing the value of their stock in plaintiff's building below the sum of $1,000, and apportioning the costs between the parties. Defendants appeal.—*Affirmed.*

*Sylvester Flynn* for appellants.

*Filkins & Schaffter* for appellee.

DEEMER, J.—Defendants leased a store building in Woolstock, Iowa, from the plaintiff for the term of five years from and after August 21, 1899, at the agreed rental of $18 per month. They were also conducting another store at the town of Kamrar under the name and style of E. P. Murphy & Co. On the 3d day of April, 1901, plaintiff commenced this action, alleging that defendants entered upon the leased premises and kept therein a stock of goods, on which he had a landlord's lien for rent due and to become due "that the defendants have no property except said stock of goods;" that within the last six weeks the defendants have been secretly and surreptitiously removing said stock of goods from said store, and shipping the same to places out of town, and reducing the stock materially thereby; that defendants have quit purchasing other goods, and are not keeping up the said stock; that defendants have been shipping goods to relatives, E. P. Murphy & Co., at Kamrar, Iowa, secretly, in boxes, crates, and barrels, and are now engaged in packing the balance of said stock for the purpose of shipping the same from Woolstock, Iowa, to the same destination to which the other goods were shipped, and where the said goods would be difficult, if not impossible, to identify by plaintiff,— all of which has been done by defendants with the design to hinder and delay creditors from collecting debts.

due said firm, and further and more particularly to prevent plaintiff from collecting the rents about to become due on the leased premises; that the value of said stock of goods does not exceed the amount of rent due under the lease at the present time; that by reason of all the foregoing the plaintiff's security has been materially impaired, and unless restrained, said security will be absolutely destroyed, and plaintiff will be left without any adequate remedy at law. Defendants, in answer, admitted the execution of the lease and the occupancy of the premises with the stock of goods, and further alleged "that the firm of W. T. Murphy & Co. is, and at all times has been, composed of two members, namely, W. T. Muphy and E. P. Murphy; that said members also own and operate a general store at Kamrar, Iowa, under the name of E. P. Murphy & Co., and have run said store continuously for the past three years; that, at times since the execution of said lease defendants have purchased for one of said stores more goods than they needed, or could easily dispose of there; that they thereupon shipped the surplus to the other store; that small quantities of goods were thus shipped from the Woolstock store to the Kamrar store, and vice versa, at various times during the entire period that the defendants have occupied said premises; that plaintiff knew of this custom, and never made any objection thereto; that the value of the stock in the defendants' store at Woolstock has never been materially reduced; that said stock is fairly and reasonably worth $3,500, and has never been worth less than $2,800; that the defendants are worth $6,000 over and above all their liabilities; that there is no rent due plaintiff at the present time." On these issues the case was tried, with the result stated. That defendants shipped a large amount of goods from Woolstock to Kamrar during the months of February, March, and April, 1901; and that they had advertised to close out the business at Kamrar, and also a special bargain sale of the Woolstock

stock, is conceded or established by the uncontradicted evidence; and it is also shown by sufficient evidence that at the time the injunction was served defendants were packing large quantities of the Woolstock stock for shipment. There is also evidence to the effect that plaintiff was informed that defendants were going to leave Woolstock, and abandon the building leased of plaintiff. True, defendants say they purchased all the goods for both stores, and had them delivered at Woolstock, from which point some were reshipped to Kamrar, and that they had no thought of abandoning the business at Woolstock; but there is no evidence that plaintiff had any knowledge of this fact, and, in the face of the declarations on defendants' part that they were closing out their Kamrar business, it is not regarded as controlling. It is manifest from the entire record that defendants were not disposing of their Woolstock merchandise in the usual course of trade; and that they were reducing plaintiff's security every time they made a shipment of goods on which he (plaintiff) had a landlord's lien. The evidence shows that at the time this action was brought defendants were solvent, but, as the rent was not due, plaintiff had no legal remedy at law for the protection of his lien. In such cases equity will afford relief by way of injunction. *Garner v. Cutting*, 32 Iowa, 552; *Martin v. Stearns*, 52 Iowa, 345; *Milner v. Cooper*, 65 Iowa, 190; *Carson v. Power Co.*, 85 Iowa, 44. It is quite generally understood in some quarters that such an action will not lie in the absence of allegation and proof that the tenant is insolvent. But this is not the true rule, and no case in this state so holds. True it is that in some of the cases cited this allegation was made; but it was not regarded as an important element, and in others there was no such allegation, as an examination will show. The action is closely assimilated to one for the preservation of mortgaged personal property where the mortgagor is about to remove the property from the reach of the mortgagee.

An injunction lies in such a case for the reason that "otherwise a fraudulent mortgagor might, at his pleasure, deprive the creditor of all benefit of his mortgage"; and, as said in the *Garner Case, supra*: "He is entitled to the aid of a court of equity to preserve and protect such security against the wrongful and fraudulent acts of the mortgagor, which may impair his security." See, also, *McCormick v. Hatley*, 107 Ind. 248 (6 N. E. Rep. 357), and cases cited. When defendants purchased property and added it to the Woolstock stock, plaintiff's landlord's lien attached, and defendants could only sell in the usual course of trade. When they shipped large portions of this stock to Kamrar, they were depreciating the value of plaintiff's security, and destroying the effect of his lien to the extent of the value of the goods so shipped. When the goods arrived at Kamrar, they were added to the stock at that place, and so mixed with the general merchandise kept there as to be incapable of indentification. Defendants had advertised the closing out of the entire business at Kamrar, and, if they had been allowed to continue, might have entirely destroyed plaintiff's security. Surely, an injunction will lie under such circumstances. The evidence shows that when the injunction was issued the Woolstock goods were worth from $3000 to $4000. There was no necessity for so broad a restraining order as was granted plaintiff when his petition was first presented, and we think the trial court correctly modified it by enjoining defendants from reducing their stock in Woolstock below the sum of $1000 in value. In view of this modification there was no error in apportioning the costs. Defendants were not prejudiced thereby in any event.

The decree is right, and it is AFFIRMED.