### BIGELOW *vs.* HEATON.

The lien of a common carrier is extinguished by the unqualified delivery of the property to the consignee.

But the lien may be retained after delivery by the agreement of the parties. *Semble. Per* BEARDSLEY, J.

Or if the delivery be procured by the fraud of the consignee, as if he falsely and fraudulently promise to pay the freight when the goods are received, the lien continues and the carrier may bring replevin.

Whether the lien is waived or not by a delivery does not depend upon the intention of the carrier, or his agent by whom the delivery is made, if it be not communicated to the consignee and agreed to by him.

REPLEVIN in the detinet, for seventy-five barrels of flour, tried at the New-York circuit in October, 1845, before ED-MONDS, C. Judge. The flour in question belonged to one Rice, who in the fall of 1841 shipped the same with other flour to the amount of 476 barrels in all, in a canal boat owned by the plaintiff, by the canal and Hudson river, to the defendant in New-York, where it arrived on Friday, the 26th November, towards evening. A part of the freight was paid when the flour was shipped, but the balance, $312,50, was to be collected of the consignee. The master called upon the defendant the morning after his arrival, and according to his testimony, the defendant promised to pay the balance of the freight when it was ascertained that the flour was all on board; or, as expressed, that the count was correct. A part of the flour was delivered on that day and the residue on Monday; and in the course of the delivery the defendant again promised to pay the freight when he should find the count to be correct. After the flour was all delivered, the master again asked the defendant to pay the freight; but he refused to pay it, alleging that the flour delivered on Monday, which was a stormy day, had been injured in the delivery; and he claimed a deduction on that account, which the master refused to allow. A day or two afterwards the master demanded a return of the flour, and that being refused, the parcel now in controversy was replevied in

Bigelow *v.* Heaton.

the name of the plaintiff, the owner of the boat and the carrier of the flour. There was a good deal of evidence upon the question whether the flour was injured in the delivery.

The judge charged the jury, among other things, that the plaintiff had a lien for the freight, which might be waived by a delivery leaving the freight unpaid; and that whether it was waived or not depended upon the intention of the parties; that the question therefore was, whether the master in this case intended to waive the lien and depend upon personal responsibility for the balance of the freight; that if he did not so intend, this action lay, unless the master was in fault in respect to the alleged injury in the delivery of the flour. The defendant excepted to this instruction, and requested the judge to charge that the delivery was a waiver of the lien unless it was procured by the fraud of the defendant. The judge refused so to charge, and the defendant excepted. Verdict for the plaintiff. The defendant moves for a new trial on a bill of exceptions.

*G. R. J. Bowdoin*, for the defendant.

*B. F. Butler*, for the plaintiff.

*By the Court*, BEARDSLEY, J. That the plaintiff had a special property in the flour, in virtue of his lien for the freight, and that this continued so long as the flour remained in his possession, was not denied; nor was it denied that the flour had been, in fact, delivered to the defendant, to whom it was consigned. The judge seems to have held that the continuance of the lien, after such delivery of the flour, might depend upon the mere intent of the plaintiff's agent, the captain of the boat, by whom the delivery was made; and that notwithstanding such delivery had been made, the lien would continue if the captain intended it should remain. This, I apprehend, cannot be maintained. An agreement between the parties, that the lien should continue, notwithstanding the delivery of the property, would present a different question; but a naked

undivulged intent on the part of the person by whom the flour was delivered into the possession of the consignee, could in no respect qualify that act. A relinquishment of possession by one who has a lien on property, is an abandonment of the lien. This, as a general rule, is entirely settled. By a transfer of the possession the holder is deemed to yield up the security he has by means of the custody of the property, and to trust only to the responsibility of the owner, or other person liable for the charge. (*Cross' Law of Lien*, 4, 31, 36, 38, 258; *Sweet* v. *Pym*, 1 *East*, 4; *Kruger* v. *Wilcox*, Amb. 252; *Dicas* v. *Stockley*, 7 *C. & P*. 587.) But if the party in whose favor the lien exists, is induced to surrender the possession of the property, by fraud or trick, the lien is not thereby divested. Upon this principle it was held, when this case was formerly before the court, that if the flour had been delivered to the defendant in consequence of his false and fraudulent promise to pay the freight as soon as the delivery was complete, such delivery did not amount to a waiver of the lien of the plaintiff, and he might, notwithstanding, maintain replevin against the defendant for the flour. (6 *Hill*, 43.) This was then regarded as the main point in the case; yet the judge, on the last trial, refused to instruct the jury, " that the carrier, by delivering the property, waived his lien, in the absence of fraud." This instruction, certainly, should have been given, for the principle stated admits of no doubt. There must be a new trial.

New trial granted.