WILLIAM W. Low *et al.*, Plaintiffs in Error, *v.* WILLIAM MARTIN, Defendant in Error.

ERROR TO LaSALLE.

A party who consents that grain left with a warehouseman, may be put in bulk, with other grain, with the understanding that he should receive a like quantity and quality, cannot maintain replevin for the grain.

If the intermixture of grain was without consent, or was the wrongful act of the warehouseman, so that thereby identity could not be established, it would be otherwise.

If there is a confusion of goods by reason of intermixture, so that each party cannot distinguish his own, each will have a proportionate property in the whole. Replevin lies for specific property, not for an undivided interest or share.

Warehousemen have a lien on property stored by them, for proper charges, and may retain possession of the property, to secure payment of such charges.

A fraudulent issue of warehouse receipts for grain not in store, does not deprive the warehouseman of his lien, for that which he has actually stored.

THIS case is stated in the opinion of the court.

J. C. CHAMPLIN, W. H. L. WALLACE and SHUMWAY, WAITE and TOWNE, for Plaintiffs in Error.

T. L. DICKEY, for Defendant in Error.

SKINNER, J. This was an action of replevin for a quantity of corn.

The defendant pleaded property in himself, traversing the averment of the declaration, that the corn was the property of the plaintiffs, and a plea setting up his lien, as a common warehouseman, for storage of the corn. To this last plea the plaintiffs replied doubly: First, denying the indebtedness for storage; and, second, that the defendant falsely and fraudulently issued to the plaintiffs divers warehouse receipts, purporting that the defendant, as a common warehouseman, had received, and had on store for the plaintiffs certain large quantities of grain of value exceeding the defendant's claim

for storage; and that the plaintiffs were thereby deceived and paid the value of the grain so falsely pretended by the defendant to have been received and to be in store for the plaintiffs. To this last replication the court sustained a demurrer. The cause was tried by a jury who returned a verdict for the defendant, which the court refused to set aside.

The instructions given and refused, upon which questions are made are numerous, and the bill of exceptions shows they are not all incorporated into the record, for which reason and that we are satisfied with the finding of the jury, we do not regard it our duty to enter upon an investigation of the positions of law they respectively assume.

The evidence justified the jury in finding that the defendant was a common warehouseman, and the plaintiffs dealers in grain; that, as such warehouseman, the defendant received on store for the plaintiffs a large quantity of corn, and with their consent, for convenience and saving of storage, put it in mass with other corn owned by himself and others, and with the understanding·that a like quantity and quality of corn should be delivered, out of the common mass in store, to the plaintiffs when required.

We are to consider under the finding of the jury, that the identity of the corn delivered and the plaintiff's property in that particular corn, were lost by their consent.

The plaintiffs, to sustain their action, should have shown that the corn replevied was their property, that is, the corn they delivered in store; or that the intermixture, by which identification of their property became impossible, was the wrongful act of the defendant, or, at least, without their consent.

The rule of the common law, as laid down by Mr. Blackstone, is, that where several persons' goods are, by consent, so intermixed that the particular portion or goods of each can no longer be distinguished, the several proprietors will have a property in common in the whole according to their respective portions put in mass. 2 Blackstone's Com. 405; Story on Bailments, Sec. 40.

It is true, if the defendant wrongfully mixed the plaintiffs' corn with his own or other persons, he could have no advantage from the act, and should bear the loss or inconvenience caused thereby. Authorities before cited; 1 Story's Eq. Com. Sec. 623; Story on Agency, Sec. 205; *Hart* v. *Ten Eyck,* 2 Johns. Chan. R. 62.

But in this case we must conclude that the jury found the intermixture or confusion of property was with the consent of the plaintiffs, and in such case, there being no wrong, the plaintiffs would lose their particular separate property in the

corn they delivered, and require an undivided aliquot part of the whole mass; which, of course, they could not seize and have restitution of by replevin. Replevin lies for specific property capable of identification and actual return (except in case of fraud or wrongful confusion of property), and cannot be maintained for an undivided interest or share. 1 Chitty's Pl. 163; 3 Blackstone's Com. 145; *McElderry* v. *Flannagan*, 1 Harr. and Gill, 308; *Hart* v. *Fitzgerald*, 2 Mass. R. 509; *Gardner* v. *Dutch*, 9 ibid. 427, and note.

The replication to which the demurrer was sustained is no answer to the plea to which it was interposed. We can conceive of no reason or policy why common warehouse-men should not have a lien on property stored by them for their proper charges, and the consequent right to retain the possession until paid.

It is true the authorities leave the law in this respect some-what unsettled, but warehousemen, like common carriers, hold themselves out as publicans (so to speak), ready to the extent of their ability, to accommodate all in the safekeeping and forwarding of property according to the course of commerce; and must necessarily look to the property rather than to the responsibility of the owner, of whom they seldom have any knowledge, for their reward. In case, therefore, where de-livery of the property to the owner is called for, there would seem to be the same reason and necessity for this lien in favor of warehousemen, as of carriers or artizans; and they should stand, in this respect, upon the same footing. *Steinman* v. *Wilkins*, 7 Watts and Serg. 466; Story on Bailments, Sec. 453; Angel on Carriers, Sec. 66, and cases there cited.

If the defendant had not performed his contract or duty as bailee, and the plaintiffs were damaged thereby to an amount exceeding what he otherwise would have been entitled to, he could have no just claim for storage and consequently no lien. *Edwards* v. *Todd*, 1 Scam. R. 462; Angel on Carriers, Sec. 413. But it does not follow because the defendant falsely and fraudulently issued to the plaintiffs warehouse receipts for other grain, that he has lost his lien for charges on the grain in controversy, alleged to have been in fact received and stored.

The receipt and storage of the grain replevied, and the falsely issuing receipts for other grain not in fact received, are different transactions; and the latter cannot be set up in avoidance of the lien arising out of the former. Angel on Carriers, Sec. 415.

*Judgment affirmed.*