# SETH F. HANCHETT

### v.

# THE FIRST NATIONAL BANK OF CHICAGO.

*Attachment—Lien of Public Warehouseman for Storage, not Subject to —Sheriff—Negligence.*

1. Goods stored by third parties in a warehouse, upon which the warehouse company has a lien for storage, are not subject to attachment for the company's debts.

2. Such liens being personal and dependent upon possession by the lien holder are incapable of assignment either by voluntary act or proceedings *in invitum.* The levy of an attachment by terminating the possession of the lien holder terminates the lien.

3. The law protects property stored in public warehouses from removal therefrom, and warehousemen have no interest in property so stored which is subject to attachment.

4. In the case presented, it is *held:* That, as no lien was obtained by the attachment, there was no lien on the money paid for storage to the Sheriff on the property to be attached; and that there was no negligence on the part of the Sheriff in failing to levy on the money so collected.

5. Where the Sheriff, in the performance of his duty, acts under direction of the plaintiff's attorney, the plaintiff can not complain of the consequences.

[Opinion filed January 25, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action on the case, brought by the First

Hanchett v. First Nat. Bank of Chicago.

National Bank of Chicago against Seth F. Hanchett, Sheriff of Cook County, to recover damages for negligence in the execution of a writ of attachment.   The declaration consists of three counts. Each count alleges the issuing of a writ of attachment from the Superior Court at the suit of the First National Bank of Chicago, against the goods, chattels, lands and tenements of the Garden City Warehouse Company, a corporation located and doing business in Chicago, in an action of assumpsit, brought for the recovery of the sum of $10,000 and interest, due to said bank from said warehouse company, upon a promissory note, and the delivery of said writ of attachment to the defendant, as such Sheriff, to execute.   The first count alleges that the defendant executed said writ by attaching divers goods, chattels, rights, credits, moneys and effects of said warehouse company, and yet, not regarding his duty in that behalf, wrongfully and unjustly intending to injure the plaintiff in the premises, did not secure the goods, etc., so attached in his hands, or provide that the same should be liable to further proceedings thereupon according to law, but negligently and wrongfully surrendered and delivered the same to parties unknown, without the consent or authority of the plaintiff, and falsely and deceitfully returned that said goods, etc., were so surrendered and delivered by authority of the plaintiff. The second count alleges that the defendant wrongfully and negligently surrendered the goods, etc., so attached to parties unknown to the plaintiff, and without the plaintiff's authority, and the third count alleges that there were, at the time said writ was delivered to the defendant, as aforesaid, and before the return of said writ, divers goods, chattels, etc., of the Garden City Warehouse Company in said county, which said defendant could and ought to have attached; yet, not regarding his duty as such Sheriff, he did not attach the same, but wholly refused and neglected so to do during the life of said writ.

To this declaration the defendant pleaded the general issue, and a jury being waived, the cause was submitted to the court for trial upon the following stipulation as to the facts:

" It is stipulated and agreed that the court may take as true and as duly proved in the above entitled cause, all the averments of the plaintiff's amended declaration, and of each count thereof from the beginning down to and including the averment in each count of the receipt by the defendant, Seth F. Hanchett as Sheriff of Cook County, Illinois, for service of the writ of attachment therein mentioned; and also, the following stated facts: That the several writs of attachment in the said counts mentioned are one and the same writ of attachment, and that on the 7th day of April, 1884, the Garden City Warehouse Company, the defendant in the attachment suit of the plaintiff referred to in said declaration, was doing a general warehouse and storage business in the City of Chicago, and had in its warehouse in that city large quantities of goods and chattels of many and various kinds, a comparatively small part of which it owned, but much the greater part of which it held as bailee in the ordinary course of its business. The defendant herein as Sheriff, as aforesaid, by his duly authorized deputy, Dexter W. Nickerson, on said 7th day of April, levied said writ of attachment on all the right, title and interest of said defendant warehouse company in and to all of said goods and chattels, and in and to the warehouse containing the same, as aforesaid, and on the same day said writ of attachment was duly served on said defendant warehouse company. At the time of this levy the said deputy Sheriff was specially notified and instructed by the plaintiff's attorney that a large but unknown quantity of said goods and chattels doubtless belonged to parties other than the said defendant warehouse company, but that the levy was to be made on all of them nevertheless, because the defendant warehouse company had an interest in or lien on the stored property for the storage thereof, and for loans and advances made thereon; and that after the levy whenever third parties should prove their ownership of any of the property, and should pay to said Sheriff the storage and the loans, the levy should be released and the storage and other money so received should be held by said Sheriff in the place and stead of the property so released; and said Sheriff by his said deputy expressly undertook to proceed on this plan, and

in fact so proceeded until he had so collected and received as storage on property which he had levied on as aforesaid, and had released under the instructions aforesaid, the sum of $4,008.60.   Of this amount $3,648.90 was so received by said Sheriff prior to the return day of said writ of attachment (which was May 5, 1884), and before the same was in fact returned.   Of this latter amount of $3,648.90 said Sheriff appropriated to costs and expenses made under and on account of said writ of attachment, the sum of $865.47, the propriety of which appropriation is not questioned in this action; and the remainder, being the sum of $2,783.43, said Sheriff, on the first day of May, 1884, without the authority, consent or knowledge of said plaintiff, and upon the order of the defendant in said attachment, paid to a party claiming to be a creditor of said defendant warehouse company, but having no special claim to said moneys except such as was conferred by said order of the said defendant; which payment, if not justified by the law upon the facts as herein stated, deprived the plaintiff in said attachment of the benefit of his said attachment to said amount of $2,783.43; that judgment was recovered by the plaintiff in said attachment suit at the June term, 1884, for $10,075 and costs of suit; and for the purposes of this suit it is agreed that more than said amount of $2,783-.43 remains due and unpaid thereon after applying all other moneys which have been or may be realized from said attachment.

It is further mutually admitted and agreed that the levy on said warehouse (but not the levy on the contents thereof) was on April 23, 1884, released by the Sheriff by the direction of the plaintiff, and that at the time the Sheriff had received only $3,199.07 of the whole amount of $4,008.60 collected and received by him as storage as aforesaid; and that the Sheriff received no other or different instructions as to the manner of levying said writ than those above set forth.

The court thereupon found the issues for the plaintiff and assessed its damages at $2,783.43, and for that sum and costs the plaintiff had judgment.   The defendant brings the record to this court by appeal.

Messrs. CAMPBELL & CUSTER, for appellant.

Appellant, as Sheriff, could not lawfully levy upon chattels held by the Garden City Warehouse Company, as bailee, for the purpose of attaching the lien or interest which said company had in said chattels for its storage charges.

There is nothing in the Attachment Act providing a way of attaching intangible rights or credits by taking possession of the thing to which the right appertains. The statute seems to contemplate attaching something tangible as the property of the defendant.

In the case at bar, that which is sought to be subjected to the action of the writ as belonging to the defendant therein, is intangible; it can not be taken in custody and possession by the officer, nor can it be found in the possession of any person, nor can it be forthcoming to answer the judgment of the court.

A question of public policy seems worthy of consideration in connection with this subject. The interest of a bailee for hire in the goods bailed is his lien for the storage charges. In this case a great many persons had goods on store with the warehouse company. If the lien of the bailee is subject to attachment in the manner contended for by appellee, then that lien is subject to sale, and in order to preserve it the officer selling must deliver the goods, to which the lien appertains, to the purchaser. These goods thereupon are scattered over the whole city or State, and even beyond the limits of the State, and beyond the jurisdiction of the court directing their sale. The bailor is entitled to the possession of his goods upon payment of the charges thereon; but they have in effect been sold without his fault, knowledge or consent, and delivered to one or more purchasers, and where shall he find him or them? The purchaser may, in the meantime, have become insolvent, may have died, or may have sold the goods themselves to an innocent purchaser. Can it be that a person storing goods to-day, can have no assurance that they will not be seized for the debt of the warehouseman to-morrow?

The Garden City Warehouse Company was doing a general storage business in the City of Chicago, in this State. Under

Secs. 1 and 2, title, Warehouses, Chap. 114, R. S., the place in which it carried on its business was a "public warehouse," of class C.

This statute gives reasonable assurance and guaranty to the depositor that the warehouseman will not remove his property from the place of storage without his knowledge and return of his receipt. Can the warehouseman evade the penalties of the statute by procuring his creditor (*bona fide* or fictitious) to do for him by indirection what he can not do himself? Can a creditor, by process of law, for the collection of his debt, do that which, if done by the debtor, would subject him to imprisonment in the penitentiary? A negative answer to these questions is a decision against the contention of the appellee in this case.

The law, as laid down in many authorities, is that a lien is not the subject of sale, and therefore can not be taken in execution. See Leg v. Evans, 6 Mees. & W. 36; Harding v. Stevenson, 6 Harris & J. 264; Kittridge v. Sumner, 11 Pick. 50; Holly v. Huggeford, 8 Pick. 73.

The interest of a mortgage before foreclosure, or entry for condition broken, is not liable to levy and sale under execution. Blanchard v. Colburn, 16 Mass. 346; King v. Cushman, 41 Ill. 31; Nicholson v. Walker, 4 Ill. App. 405, and cases there cited.

Although appellant, as Sheriff, did levy upon chattels held by the Garden City Warehouse Company as bailee and did collect storage charges due thereon to the warehouse company, yet the money so collected was not thereby attached, nor was it then subject to attachment as the property of the Garden City Warehouse Company.

What the deputy Sheriff did about the collection of the money was done by the express direction of appellee. Even though the writ authorized him to seize the property to the end that the lien of the company might be attached, yet it gave him no direction or authority to collect the money. He could not, as Sheriff, acting under the writ, act as an agent for the plaintiff therein to collect debts due the defendant therein. He could not even do so as an individual, without the consent of the creditor.

Coin paid to an attorney in satisfaction of a debt held by him for collection, can not be attached as the property of the party for whom it was collected. Maxwell v. McGee, 12 Cush. 137. See also, Carroll v. Cone, 40 Barb. 220.

Money collected by an officer on execution is not subject to garnishment in his hands, and this outside of any statutory provision requiring its payment to the plaintiff. The money collected is not, in legal contemplation or intendment, the money of the plaintiff in execution until it is actually paid over to him. Reddick v. Smith, 3 Scam. 452; Turner v. Fendall, 1 Cranch, 117.

The plaintiff in the execution has only a right of action against the Sheriff for the money collected. So in this case, the Sheriff, having collected the storage money, was liable to an action at the suit of the warehouse company.

If the money so collected was then subject to attachment, appellant was not in law bound to attach it, for the reason that he was not directed so to do, but was specifically directed how to execute the writ. It was not his duty to execute it in any other manner.

If the plaintiff directs the manner of executing a writ, he can not afterward hold the officer so executing it for not executing it according to its exigency. Abbott v. Edgerton, 30 Vt. 208; Cowdry v. Smith, 50 Vt. 235; Ordway v. Bacon, 14 Vt. 378; Levy v. McDowell, 45 Tex. 220.

If the money so collected was not then subject to attachment, appellant was bound to pay it over on the order of the Garden City Warehouse Company, or, at least, the payment by him was justifiable. See Carroll v. Cone, 40 Barb. 220.

Mr. ORVILLE PECKHAM, for appellee.

The Attachment Act should receive not a restrictive but a liberal construction, and technicalities and subtleties should not be allowed to impair its efficacy, however they may have been allowed to do so in other States. Hannibal & St. J. R. R. Co. v. Crane, 102 Ill. 249, 258.

By virtue of their lien for storage, etc., the Garden City Warehouse Company had an interest in the goods in question which was attachable.

Hanchett v. First Nat. Bank of Chicago.

As this has not been, so far as we know, expressly decided in the case of a warehouseman's bailment, but has in the case of a pledgee's, I wish first to point out that there is no material distinction between these two kinds of bailment—that is, no distinction which is material in this case.

The warehouseman's bailment involves in itself a pledge, according to Story's definition. of the latter, "a bailment of personal property as a security for some debt or engagement." Story on Bailments, Sec. 286.

The warehouseman is also declared by the Illinois Supreme Court to have the rights of a pledgee, including the right to sell for his reimbursement when the debt becomes due. Cushman v. Hayes, 46 Ill. 145, 153.

Apart from authority, moreover, it is easy to see that the rights and the duties of the warehouseman do not substantially differ from the rights and the duties of the pledgee. In both cases the rights are to retain the bailment as security, and in the event of non-payment of the debt secured, to sell the bailment and thus obtain payment. In both cases the duties are to keep the bailment safely and return it on demand when the debt secured by it is paid. In the one case the security of the creditor is the primary and more prominent purpose; in the other the safe keeping of the property; but both purposes are always present in both cases, and together they are all that either of these two kinds of bailments provides for.

The pledgee's interest in the pledge is subject to execution.

Story says this is a proposition on which no direct adjudication has been made. Story on Bailments, Sec. 353, note 5.

Edwards (on Bailments, § 264) also propounds this as a debatable question and discusses it at some length, decidedly inclining to the negative. In a note, he mentions the fact that it has been decided in the affirmative by the New York Superior Court in Saul v. Kruger, 9 How. Pr. 569.

All the cases I have been able to find in which the language held by the court would lead logically to the conclusion that the lien could not be attached, are cases in which the attempt was made to levy on the goods without regard to the lien, and

the setting up of the lien was a mere afterthought, when the matter had been brought into court.

In Cool v. Phillips, 66 Ill. 216, the question whether the warehouseman's right as such could have been levied on does not seem to have been raised at all. Hence Mr. Justice Walker's *obiter dictum*, made probably without any thought of an application to such a case as ours, that he "had no interest in it subject to execution," can not be considered as anything like an adjudication of the question now in hand.

It would not be at all to the purpose to say that merely equitable interests are not subject to attachment.

The warehouseman has "all the rights of absolute ownership, except as against the real owner." German National Bank v. Meadowcroft, 4 Ill. App. 630, 639.

If either of the two should be regarded as having a merely equitable interest, it is the general proprietor. "The general property which the pledgor is said usually to retain, is nothing more than a legal right to the restoration of the thing pledged, on payment of the debt." Wilson v. Little, 2 N. Y. 443, 448.

Certainly this legal right would seem to resemble very closely an equity of redemption.

"The pawnee may sell or assign all his interest in the pawn, or he may convey the same interest conditionally by way of pawn to another person, without, in either case, destroying or invalidating his security." Story on Bailments, Sec. 324; Nash v. Mosher, 19 Wend. 431; Silverman v. Bush, 16 Ill. App. 437; Belden v. Perkins, 78 Ill. 449; Bradley v. Parks, 83 Ill. 169; Warner v. Martin, 11 How. 209; McCombie v. Davies, 7 East, 5.

When goods are *thus* pledged by a factor, the original owner must tender the amount of the lien in order to recover them. Warner v. Martin, 11 How. 209; Belden v. Perkins, 78 Ill. 449.

When the Sheriff attached the interest of the Garden City Warehouse Company in the goods on store, he simply put that interest in pledge to secure a debt due from the company.

It being well settled that such a pledging would have been

valid if done by the voluntary act of the company. what can there be to invalidate it in the solitary fact that it is done against the will of the company, and by operation of law, when that fact merely effects the one object for which the attachment law was enacted?

To say that the absence of the debtor's operation, in and of itself, without any other element, invalidates an attachment, is not to construe the attachment law liberally but to nullify it.

Hence, even if we had not the authority of the decision in Saul v. Kruger, the doctrine of that case is a necessary result of the application of the Illinois attachment law to the facts of the case.

Thus far we have proceeded on the supposition that the warehouseman's right in the goods is the same as that of a pledgee. But his lien is really of a more meritorious character. The pledgee, in his character of pledgee, does nothing for the benefit of the pledge itself; his custody of it is for his own security entirely. So far as the relation of pledgee and pledge goes, it would be just as well for the goods, and better for the general owner, if the pledgee did not keep them.

The warehouseman, on the other hand, keeps the goods for the benefit of the goods. And though his custody does not add anything to their value, it certainly prevents deterioration, perhaps even total loss, and is, therefore, a benefit of the same kind equally important.

While the pledgee has, therefore, no natural right in the pledge itself, the warehouseman has in his deposit, and may be properly said to have a *jus in re*, a virtual right of property by creation.

It is simply monstrous to say that such a right is not sufficiently real to be laid hold of by attachment or execution.

That the warehouseman's lien rests upon this basis, is recognized in Steinman v. Wilkins, 7 Watts & S. 466; Low v. Martin, 18 Ill. 286; Story on Bailment, Secs. 422, 453.

The conversion of the warehouseman's interest into money by the giving up of the goods to the general owners and reception of the charges from them, operated to transfer the lien of the attachment to the money thus received. Wheeler v. Smith, 11 Barb. 345.

BAILEY, J.   We are of opinion that the goods stored by third parties in the warehouse of the Garden City Warehouse Company were not subject to attachment for the debts of the warehouse company.   Said company, it is true, had a lien on said goods for storage, but that was a mere personal lien and was nothing more than a right to retain possession of said goods until its charges for storage should be paid or tendered. Chase v. Westmore, 5 Maule & Selwyn, 180; Jackson v. Cummins, 5 Mees. & Wels. 342; Kirkman v. Shawcross, 6 Durnf. & East, 14.   Such lien is not a conventional but a common lien, and is of the same character with the liens which the law gives to common carriers, wharfingers, inn-keepers, bailees for hire, artisans and others who are obliged by law to receive the goods of others or to be to some expense about them, or whose services have contributed to enhance the value of the property placed in their hands.   In Low v. Martin, 18 Ill. 286, the lien of a warehouseman is placed expressly upon the same footing with that of a carrier or artisan.   See also, Steinman v. Wilkins, 7 Watts & S. 456.   In case of liens of this character, if the lien holder parts with the possession of the property his lien is lost.   Bigelow v. Heaton, 4 Den. 496; Sears v. Willis, 4 Allen, 222; Bailey v. Quint, 22 Vt. 474; Reineman v. C., C. & B. R. R. Co., 51 Iowa, 338; Geneva, etc., R. R. Co. v. Sage, 35 Hun, 95; Board of Trade v. Buckingham, 65 Ill. 72.

Liens of this character confer no rights beyond the mere right to detain the property, and give no power of sale.   Mr. Hutchinson, in his treatise on Carriers, Sec. 494, states the rule as follows: "At common law and without some statutory authority, the carrier can not sell the goods for his charges upon them.   The lien confers no such right.   It consists merely of the right to keep or detain the goods, and if the consignee or owner refuse to pay for the carriage and take them, the remedy of the carrier is to have them sold under judicial orders or legal process, to be obtained by a proceeding in equity.   A sale without such authority would be a conversion by the carrier, and he would thereby become liable to whatever damage the owner might sustain by the illegal act,

and the purchaser would acquire no title." See also, Briggs v. B. & R. R. R. Co., 6 Allen, 246; Hunt v. Haskell, 24 M. E. 339; Fox v. McGregor, 11 Barb. 41; Rankin v. M. & P. Packet Co., 9 Heisk. 564; Jones v. Pearle, 1 Strange, 557; Chandler v. Belden, 18 Johns. 157.

Such liens being personal and dependent for their validity and continuance upon the retention of the possession of the property by the lien holder, it follows necessarily that they are incapable of assignment, either by the voluntary act of the lien holder or by the proceedings *in invitum*. The levy of an attachment necessarily terminates the possession of the lien holder, and as a legal consequence it, at the same time, terminates also the lien. It follows that after the Sheriff has seized the goods by virtue of his attachment writ and taken the same into his possession, no right or interest of the defendant in the attachment remains in his hands which could be subjected to sale on execution.

But there is another reason why the goods in question were not liable to attachment for the debt of the warehouse company. The warehouse, in which said goods were stored, being a place where property was stored for a consideration, was a public warehouse within the meaning of the statute of the State on that subject. Chap. 114, Sec. 121, R. S. Property stored in a public warehouse is protected from removal therefrom by the policy of the law. Sec. 143, Chap. 114, R. S., makes the removal of such property from store by warehousemen, except to preserve it from fire or other sudden danger, without the return and cancellation of all outstanding warehouse receipts, a felony, punishable by imprisonment in the penitentiary for a term of not less than one or more than ten years. Also, by Sec. 125 of the Criminal Code, it is provided that whoever, having given a warehouse receipt for property deposited in store in a warehouse, shall remove such property from such place of storage, or allow the same to be done without the written consent of the holder of the receipt, except in cases of necessity for the purpose of saving such property from loss or damage by fire, flood or accident, shall be imprisoned in the penitentiary not

less than one nor more than ten years. The right of removal for any purpose except those specified being thus prohibited by law, it is clear that the warehouseman has no interest in the property stored in his warehouse, which is capable of being assigned by him, or which can be seized on execution or attachment. The very act of seizure necessarily involves a taking of the possession of the property by the Sheriff, as well as its removal by him to some other place of custody.

We are referred to some cases which sustain the right of a creditor to seize and sell the interest of a mortgagee or pledgee of personal property on execution. It is sufficient to say that those are cases of conventional liens, that is, of liens created by contract; and it is held that mortgages and pledges of personal property carry with them power of sale in the mortgagee or pledgee.

In the present case, after the Sheriff had seized the goods in store in the warehouse, the owners of the goods redeemed them from him by paying him the storage due, thus creating in his hands the fund which is the subject of the present suit. The scheme by which this mode of collecting the plaintiff's debt was adopted, appears to have originated with the plaintiff's attorney, as it is admitted that he directed the Sheriff to levy upon all the property in store in the warehouse, at the same time informing him that probably most of said property belonged to other parties, and directing him to receive the storage money from such owners as should appear and prove their property, and hold the money in place of the property. No direction was given to levy on the money itself and no such levy was in fact made.

It is insisted, however, that the lien of the attachment, upon the redemption of the property by the owners, attached by force of law to the storage money paid to redeem. This, perhaps, might be true if the attachment had ever been itself a lien on the property, but as that was not subject to the attachment, no lien on the property was acquired by the levy, and there was, therefore, no lien to be transferred to the fund.

It is further insisted that if the attachment writ was not already a lien on the money in the hands of the Sheriff, he

Hanchett v. First Nat. Bank of Chicago.

should have levied his attachment upon it, and that his failure to do so was negligence. To this there are two answers. First, the Sheriff, in his treatment of said fund, was acting under the instructions of the plaintiff's attorney, and we are unable to see that he in any degree failed to follow such instructions. The instruction was to hold the money in place of the property, and, therefore, by the same right by which he held the property. That he did. There was no instruction to levy on the money, and so long as the plaintiff's attorney undertook to direct the Sheriff in the performance of his duty, the plaintiff can not complain of any consequences resulting from such obedience.

In the second place, the money in the hands of the Sheriff was not the money of the warehouse company subject to attachment. The Sheriff was not the company's agent to collect said money, and it did not become the company's property by the mere fact of such collection. It was not until the company adopted the Sheriff's acts that the money became its property. That it did, when it gave the Sheriff an order to pay the money over to another creditor. If the Sheriff had had a writ in his hands at that time, it might have been his duty to levy it on the money. But the attachment had then been returned, and for the purpose of making a further levy it was *functus officio*. There was, therefore, no negligence in failing at that time to make a levy and in paying the money over to another creditor on the company's order.

The judgment of the court below, holding the Sheriff liable to the plaintiff for said money, is unsupported by the evidence, and the judgment will, therefore, be reversed and the cause remanded with instructions to enter a judgment in favor of the defendant for costs.

*Judgment reversed.*