FREDERICK L. JOHANNS, Appellant and Respondent, *v.* THEODORE FICKE, Respondent and Appellant, and MARY A. DUNN, Respondent.

**Liens — construction of statute giving lien to livery stable keepers — when interruption of possession does not destroy lien — rights of prior mortgagee.**

1. The statute giving a lien to livery stable keepers (Lien Law, § 183, Cons. Laws, ch. 33) is in derogation of the common law and must be strictly construed in ascertaining and determining the persons to whom or cases to which it is applicable. It is also remedial, and, its applicability having been affirmed, it must be construed liberally so as to give effect to the remedy, in view of the beneficial purpose contemplated.

2. Section 183 was intended to protect livery stable keepers against the rule of the common law that interruptions of actual continuous and exclusive possession were inconsistent with the existence of a lien. An owner of property subject to a lien under this section cannot destroy the possession, or the lien, as between himself and the lien-holder, at least, by receiving the property under an agreement to use it in a certain way for a special purpose, and thereupon return it, provided the agreement be reasonably consistent with the existence of the bailment, and there is not a voluntary relinquishment of the lien.

3. The rights of a prior lienor by mortgage are subordinated to those of a lienor under this section where such prior lienor was a party to the removal of and received from the owner and kept the property in controversy with full knowledge of all the facts as to the lien of the stable keeper, including the boarding and keeping of the

33

property by him, but the court does not consider or determine whether or not a person becoming, without notice of such facts and for value, a purchaser, mortgagee or bailee of the property through the owner, while in his qualified possession, would acquire rights paramount to the lien.

*Johanns* v. *Ficke,* 171 App. Div. 897, modified.

(Submitted October 25, 1918; decided December 3, 1918.)

CROSS-APPEALS from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 27, 1915, modifying and affirming as modified a judgment entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts are stated in the opinion.

*George W. McKenzie* and *Charles E. Fiske* for plaintiff, appellant and respondent. There never was a merger or waiver of plaintiff's lien as a livery stable keeper as matter of law. (*Robins Dry Dock & Repair Co.* v. *Chesebrough,* 216 Fed. Rep. 121; *The Cimbria,* 214 Fed. Rep. 128; *Pflueger* v. *Lewis F. & M. Co.,* 134 Fed. Rep. 36; *Happy* v. *Mosher,* 48 N. Y. 319; *Hill* v. *Beebe,* 13 N. Y. 557; *Townsend* v. *Provident Realty Co.,* 110 App. Div. 229; *Bascom* v. *Smith,* 34 N. Y. 320; *Miller* v. *Smith,* 20 App. Div. 507; *Jones* v. *Moore,* 67 Hun, 109; *Hall* v. *Long,* 34 Misc. Rep. 1; *Wolf* v. *Schaefer,* 103 App. Div. 567; *Linneman* v. *Bieber,* 85 Hun, 477; *Keogh Mfg. Co.* v. *Eisenberg,* 7 Misc. Rep. 79.) There never was any intention on the part of Johanns to let Dunn or Ficke have the chattels free from his claim or lien or possession, and it was not so agreed. (*Danzer* v. *Nathan,* 145 App. Div. 454; *Bigelow* v. *Heaton,* 4 Den. 496; *Fitchett* v. *Canary,* 131 N. Y. 664; *Cook* v. *Kelly,* 9 Bosw. 358.) Ficke had no lien, as a keeper of a livery stable, as against plaintiff. (*Soltau* v. *Gerdau,* 119 N. Y. 380; *Danzer* v. *Nathan,* 145 App. Div. 454; *Bank of Rochester* v. *Jones,*

4 N. Y. 497; *Mason Stable Co.* v. *Lewis,* 16 Misc. Rep. 359; *Hassett* v. *Lanborn,* 62 App. Div. 589; *Thourot* v. *Delahaye Import Co.,* 69 Misc. Rep. 352; *Cotta* v. *Carr,* 27 Misc. Rep. 545; *Armitage* v. *Mace,* 96 N. Y. 538; *Smith* v. *O'Brien,* 46 Misc. Rep. 325; 103 App. Div. 596.)

*Henry D. Merchant* for defendant, respondent and appellant. The findings require payment of .Ficke's stable bill as well as his chattel mortgage, in preference to plaintiff. (*Smith* v. *O'Brien,* 46 Misc. Rep. 325; *Thourot* v. *Delahaye Import Co.,* 69 Misc. Rep. 351.)

COLLIN, J. The action is to secure a judgment establishing and foreclosing a lien claimed by the plaintiff as a livery stable keeper, under section 183 of the Lien Law (Cons. Laws, chapter 33). The defendant Ficke asserted liens as a livery stable keeper and as a mortgagee, and denied the existence of that claimed by the plaintiff. The defendant Mary A. Dunn was the owner of the property, subject to the claims of the parties. She is not represented here.

The section 183 provides: " A person keeping a livery stable, or boarding stable for animals, or pasturing or boarding one or more animals, or who in connection therewith keeps or stores any wagon, truck, cart, carriage, vehicle or, harness, has a lien dependent upon the possession upon each animal kept, pastured or boarded by him, and upon any wagon, truck, cart, carriage, vehicle or harness, of any kind or description, stored or kept provided an express or implied agreement is made with the owners thereof, whether such owner be a mortgagor remaining in possession or otherwise, for the sum due him for the care, keeping, boarding or pasturing of the animal, or for the keeping or storing of any wagon, truck, cart, carriage, vehicle and harness, under the agreement, and may detain the animal or wagon, truck, cart, carriage, vehicle and harness accordingly, until such sum is paid."

From the decision of the trial justice it appears: The plaintiff, keeping a livery stable in the borough of Brooklyn, boarded horses and kept trucks and harnesses, under an express agreement with Walter E. Dunn, the mortgagor of the property and the predecessor of Mary A. Dunn, from April 1, 1914, to July 30, 1914. At the beginning of and through that period the defendant Ficke held a valid and duly filed mortgage on the property. On July 17, 1914, the plaintiff, Dunn and Ficke came together and concluded that Dunn owed the plaintiff, because of the boarding and keeping, twelve hundred dollars and eight cents. Dunn then paid three hundred forty dollars and eight cents and in the presence of Ficke, in consideration that the plaintiff would not foreclose his claimed lien, agreed with the plaintiff that he, Dunn, would permit the property to remain at the plaintiff's stable and when he used it in the daytime would return it at night to the stable; he also executed and delivered to the plaintiff, for the further protection of his lien, in the presence of Ficke, a chattel mortgage, in the form of a bill of sale, which was duly filed, of the property as security for the payment of the balance of eight hundred and sixty dollars. The plaintiff agreed not to demand the payment of the sum secured by the mortgage for one year, provided Dunn paid the current subsequent charges for the board and care of the property. On July 30, 1914, Dunn took the property, for use in his business, from and did not return it to the stable of the plaintiff, but took it to the stable of Ficke, with the consent of Ficke, but without the plaintiff's consent, and the property was boarded and kept at Ficke's stable until seized and sold by the sheriff in this action. Dunn used the property, while at the plaintiff's stable, in his business and returned it to the stable for the nights and when not in use. Until October 22, 1914, when Ficke, without the consent of the plaintiff or Dunn, assumed

absolute possession of the property and refused to Dunn the further use of it, Dunn treated the property in the same manner. On July 30, 1914, Dunn owed the plaintiff ten hundred fifty-six dollars and eighty-two cents. Ficke boarded and kept the property from July 30, 1914, to and including November 29, 1914, without being paid for any part of said period, except for the month of August, which was paid for by said Dunn, and claimed a lien in the sum of one thousand and thirty-eight dollars and ninety-eight cents. On November 30, 1914, the plaintiff instituted this action and the sheriff seized the property under the writ of seizure issued in it, and on December 14, 1914, sold it pursuant to the order of the court for the gross sum of twenty-three hundred and fifty-three dollars, and now has the net proceeds of the sale. The trial court decided that the plaintiff lost, as to Ficke, his lien as the keeper of the stable, by voluntarily delivering possession of the property to Dunn from day to day, notwithstanding Dunn's agreement that such delivery should not destroy it; that under his mortgage he was entitled to the amount of his claim, to wit, ten hundred and fifty-six dollars and eighty-two cents, and adjudged that the avails of the property be paid in this manner: To Ficke, the sum unpaid on his chattel mortgage, found by him to be eight hundred and eighty-three dollars and forty-six cents, the increase of which sum to nine hundred and forty-three dollars and thirty-five cents constituted the modification of the judgment by the Appellate Division; to the plaintiff, the sum unpaid on his chattel mortgage, that is, ten hundred and fifty-six dollars and eighty-two cents; each payment to be with interest from the date of the judgment, and to Mary A. Dunn, the balance.

We will determine, now, whether or not the plaintiff had at the commencement of the action a lien as the keeper of the livery stable. The sole source of such a

lien is the statute. The common law did not extend to keepers of livery stables the doctrines giving rise to the liens of innkeepers, and of bailees for hire, who by their labor and skill impart additional value to the goods delivered to them. The legislative intention, as expressed in the section 183 must be ascertained and followed. It is certain that Dunn, the mortgagor of the property and possessor of the equity of redemption, had the right and authority to enter into the agreement with the plaintiff that the latter should board and keep the property. (*Barrett Manufacturing Company* v. *Van Ronk*, 212 N. Y. 90.) It is equally true that the agreement, as found, was sufficient, under the statute, as the basis of the lien, and that it and the boarding and the keeping of the property gave rise to the lien, unless the acquiescence of the plaintiff in the taking by Dunn of the property from the stable for use in his business, and to be returned when the use ceased, barred or destroyed it. Under the findings of the trial court, the arrangement or understanding, if not the express agreement, between the plaintiff and Dunn was that the latter should so take and return the property. The statute said, in effect, the plaintiff had " a lien dependent upon the possession upon " the property for the sum due him and might " detain " the property until the sum was paid. It is in derogation of the common law and must be strictly construed in ascertaining and determining the persons to whom or cases to which it is applicable. It is also remedial, and, its applicability having been affirmed, it must be construed liberally so as to give effect to the remedy, in view of the beneficial purpose contemplated. It expresses the legislative intention to give to a livery stable keeper the lien which the common law did not give. In case the lien does not arise for the reason (the other statutory essentials to the lien existing) that the possession of the livery stable keeper is not actual, continuous

and exclusive, the statute is nugatory as to the stable keeper. The temporary absences of horses and vehicles from the livery stable where they are boarded or kept is a characteristic and condition inseparable from and integral to the business. Temporary removals of the property are inherent in it. It was within the legislative comprehension that unbroken actual possession of the property by the stable keeper was impracticable. To enact that a livery stable keeper shall have the lien, provided he does not part with the actual and exclusive possession, which he gets, generally speaking, to enable the owner to take and use the property away from the stable and his control, is unreasonable and of slight effect. Such an enactment applies no remedy to the doctrine of the common law which declared: The nature of the contract between the stable keeper and the owner of a horse put at board is such that the elements of a lien are lacking. The owner has the right to use and possess the horse at all times. The lien is the right to retain. Retention necessarily connotes possession. A lien depends upon an uninterrupted possession, and is lost or waived when possession is voluntarily surrendered. (*Grinnell* v. *Cook*, 3 Hill, 485; *Bigelow* v. *Heaton*, 4 Denio, 496; *Jackson* v. *Cummins*, 5 Mees. & Wels. 342.) Chief Justice BEST said: " There is no (livery stable keeper's) lien, because the horse is subject to the control of its owner, and may be taken out by him; and the first time it goes away, there is, of course, an end of the lien." (*Bevan* v. *Waters*, 3 Carr. & P. 520.)

Unless the language compels we will not regard a statute as purposeless. It is always presumed, in regard to a statute, that a result, reasonable and enforcible, was intended by it. (*Travelers Insurance Company* v. *Padula Company, Inc.*, 224 N. Y. 397.) The courts must, under the proper rules of construction, ascertain the intended result and enforce it if expressed. The

language of the statute reveals that the word " lien " within it was intended to have its common-law meaning, namely, the right to detain the property until the charges, in which the lien originated, are satisfied. The right to retain or detain property is exercisable only as to that possessed. The property may, however, be possessed either actually or constructively. Its owner cannot destroy the possession of the lienholder by force, trick or fraud or against his will. (*Bigelow* v. *Heaton*, 4 Denio, 496.) He cannot destroy the possession, or the lien, as between himself and the lienholder, at least, by receiving the property under the agreement to use it in a certain way for a special purpose, and thereupon return it, provided the agreement be reasonably consistent with the existence of the bailment, and there is not a voluntary relinquishment of the lien. In the instant case, before the property was taken from the stable by Dunn on July 30, 1914, the existence of the lien for the sum due the plaintiff had been declared and admitted; Dunn was under the agreement to return the property to the stable at the close of the use of it in the business of the day and that it should remain while in his possession, so qualified, subject to the lien, and the plaintiff did not intend to and did not terminate his right to the possession of it. Under such conditions the bailment was not terminated and the plaintiff did not waive or lose the lien. When the property was not returned he could have recovered the possession in the action of replevin. Judicial opinion in decided cases supports those conclusions. (*Caldwell* v. *Tutt*, 78 Tenn. 258; *Welsh* v. *Barnes*, 5 N. D. 277; *State* v. *Shevlin*, 23 Mo. App. 598; *Young* v. *Kimball*, 23 Penn. St. 193; *Walls* v. *Long*, 2 Ind. App. 202; *Bigelow* v. *Heaton*, 4 Denio, 496; *McGlasson* v. *Hennessy*, 161 Ill. App. 387; *Smith* v. *Marden*, 60 N. H. 509; *Holderman* v. *Manier*, 104 Ind. 118.) There are decisions of the contrary import. (*Cardinal* v. *Edwards*, 5 Nev. 36;

*Estey* v. *Cooke*, 12 Nev. 276; *Marseilles Mfg. Co.* v. *Morgan*, 12 Neb. 66; *Vinal* v. *Spofford*, 139 Mass. 126.) The section 183 was intended to protect livery stable keepers against the rule of the common law that interruptions of actual continuous and exclusive possession were inconsistent with the existence of a lien.

Under the findings, the giving of the chattel mortgage by Dunn to the plaintiff and the making of the agreement as to the payment of the sum due the plaintiff, on July 17, 1914, did not destroy the lien. (*Wiles Laundering Co.* v. *Hahlo*, 105 N. Y. 234.)

Under the established law of this state the lien of the plaintiff was prior or superior to the rights of Ficke as mortgagee. (*Corning* v. *Ashley*, 51 Hun, 483; affd. on opinion below, 121 N. Y. 700; *Barrett Mfg. Co.* v. *Van Ronk*, 212 N. Y. 90.) It is true, however, that the weight of judicial opinion is that the lien of the stable keeper is not superior to the right created by a prior valid filed mortgage.

Ficke knew on July 30, 1914, when, with his consent, Dunn took the property to his stable, all the facts in regard to the boarding and keeping of the property by, and the lien of, the plaintiff. It, therefore, is not necessary that we should, and we do not, consider or determine whether or not a person becoming, without notice of those facts and for value, a purchaser, mortgagee or bailee of the property through Dunn, while in his qualified possession, would acquire rights paramount to the lien.

The findings of the trial justice, although inconsistent, establish that Ficke had, as the keeper of a livery stable, a lien upon the property for the sum due him for boarding and keeping it from July 30 to November 29, 1914.

The judgments of the Appellate Division and of the Special Term should have decreed and should be so modified as to decree that the plaintiff recover and be paid first out of the moneys now in the hands of the

sheriff of the county of New York, in this action, ten hundred and fifty-six dollars and eighty-two cents; that Ficke recover and be paid next therefrom the sum of ten hundred and thirty-eight dollars and ninety-eight cents, each payment to be with interest from the date of the judgment of the Special Term, and further, so much of the sum of nine hundred and forty-three dollars and thirty-five cents as the balance, if any, would pay, and the judgment of the Appellate Division should be further modified by striking therefrom the allowance to the defendant Ficke of the sum of one hundred and sixteen dollars and forty cents, his disbursements as allowed and taxed, with costs in this court and in the Appellate Division to the plaintiff as against the defendant Ficke.

HISCOCK, Ch. J., CHASE, CUDDEBACK, HOGAN and McLAUGHLIN, JJ., concur; CRANE, J., absent.

Judgment accordingly.