ANN KAMARAN, Plaintiff, *v.* SIDNEY GARAGE, INC., Defendant.

Municipal Court of New York, Borough of Manhattan, Fifth District, June 30, 1930.

*Bernard Fliaschnik,* for the plaintiff.

*Irving Dolen,* for the defendant.

WHALEN, J.  This is an action in replevin by the plaintiff, who claims to be the purchaser and present owner of an automobile, against the defendant, a garage keeper, claiming a lien for storage furnished and gas and oil supplied to one Sherman, the former owner of the car in question.

The plaintiff testified that she lives alone in an apartment at 235 West End avenue and is employed as a manicurist; that she had known Sherman for about three years before January, 1930; that in the latter part of December, 1929, he called her up on the telephone and stated that he had a car that he wanted to sell right away and that he would sell it to her " reasonable."  She stated that he called her again on the telephone on January second and talked with her, and she agreed to buy the car for $500.  She gave him two checks for $250 each, one dated January tenth and the

other dated March fourth, and received a bill of sale. She said that she asked to see the car and Sherman said he would show her the car in front of the Motor Vehicle Bureau on Fortieth street. The car was delivered to her then on January third and she procured a new license in her name from the Motor Vehicle Bureau on that day. That night she took the car to the defendant's garage, which was near her home, and stored it. It was there until January seventh, during which time she took it in and out several times, and on January seventh the garage detained the car and refused to allow her to take it out, claiming a lien for the bill owned by Sherman, the former owner.

On the part of the defendants, testimony was offered to show that Sherman had stored the car with the defendant continuously from September 17, 1928, and that it had not been taken out of the garage for about three weeks prior to January third. It was Sherman's custom never to pay up in full, but to pay from time to time on account of his bill. The manager of the garage testified that on January 3, 1930, he had a conversation with Sherman, in which he called his attention to the balance of his account, and asked for payment. He claims that they went over the account, and that Sherman agreed to pay in a couple of days. He was then allowed to take the car out on January third, and it was at this time that he took it over and delivered it to the plaintiff.

There was a failure of competent proof of the items of the defendant's counterclaim at the trial, and the defendant was permitted to amend its answer to set up an account stated. The amount claimed by the defendant to have been due on January 3, 1930, was $193.38, but no testimony has been offered to show just what this consists of or when the various items of oil and gas were furnished.

Under the circumstances, it appears that a fraud was practiced by Sherman, and the question is, who is to suffer the consequences. If it were a question merely between Sherman and the garage, it would be one easily answered, because in the important case of *Johanns* v. *Ficke* (224 N. Y. 513, at p. 520) the court said: " The right to retain or detain property is exercisable only as to that possessed. The property may, however, be possessed either actually or constructively. Its owner cannot destroy the possession of the lienholder by force, trick or fraud or against his will. (*Bigelow* v. *Heaton*, 4 Denio, 496.) " In this case, however, the rights of a third party intervene. If there were anything to show that this plaintiff knew about the fraud, she would be bound by it and could not retain any advantage to herself through the fraud.

In the same case of *Johanns* v. *Ficke* (224 N. Y. 513) one Dunn owned some horses and wagons that he had stabled with Johanns for a certain period of time, until the stable bill amounted to around $1,000. Ficke, the defendant, held a mortgage on the horses and wagons, and at a conversation between Dunn, Ficke and Johanns it was agreed between them that Dunn owed the stablekeeper, Johanns, a certain amount. Dunn thereupon gave a chattel mortgage to Johanns for that amount, and Johanns agreed to wait a year for the payment of the balance, and permit Dunn to take his horses and wagons out every day in the conduct of his business, on condition that he would return the horses and wagons to the Johanns stable each night and keep the current charges paid up. After a month or so, instead of returning the horses and wagons to Johanns' stables, one night Dunn took them to Ficke's place of business, where Ficke stabled the same horses and wagons for a further period. The Court of Appeals held in that case that Johanns did not lose his lien, and that it was binding on Ficke, because Ficke knew all about it. At page 521, the court said: " Ficke knew on July 30, 1914, when, with his consent, Dunn took the property to his stable, all the facts in regard to the boarding and keeping the property by, and the lien of, the plaintiff. *It, therefore, is not necessary that we should, and we do not, consider or determine whether or not a person becoming, without notice of these facts and for value, a purchaser, mortgagee or bailee of the property through Dunn, while in his qualified possession, would acquire rights paramount to the lien.*" It will thus be seen that our case comes within the exception referred to by the Court of Appeals, upon which the Court of Appeals refused to express itself.

In the present case there is nothing definite to show that the plaintiff knew anything about the defendant's lien on the car at the time she purchased it. Such a knowledge may be suspected, but fraud such as that would amount to must be definitely proven and may not be left to mere suspicion or conjecture. I have read all the cases cited, and none of them involve the precise situation now before the court.

In the case of *Rapp* v. *Mabbett Motor Car Co.* (201 App. Div. 283) the plaintiff Rapp had purchased a car upon a conditional sale contract from the defendant. The plaintiff gave to the defendant a series of twelve promissory notes, due on the tenth day of each month, and agreed that the title to the car should remain in the defendant until the notes were paid in full. After the execution of the contract, the defendant assigned its interest in the conditional sale contract, and indorsed the series of promissory notes to one Oster. The promissory note of the plaintiff which

became due on May tenth was unpaid on June third, and on that day an officer of the defendant found the automobile unattended on the public street and took it into his possession. The plaintiff brought suit to recover possession of the car, with damages for its detention. It appeared that the defendant also made repairs to the plaintiff's car and sold supplies for the car, and those charges had not been paid for at the time the defendant seized the car. It became necessary then to consider the meaning and effect of section 184 of the Lien Law (as amd. by Laws of 1929, chap. 28). In its discussion of this question, the court said (p. 286): " In the present case the defendant did not come into possession of the car by any voluntary act of the plaintiff, but only by the exercise as Oster's agent of Oster's superior right. The possession which it took was not its possession but the possession of Oster. The interests of the defendant and of Oster in respect to possession were hostile. If the defendant was entitled to a lien at all, it was entitled to a lien not only against the plaintiff, but also against Oster, for the defendant's lien, if it had one, was superior not only to the claim of the plaintiff but to the claim of Oster. A literal reading of section 184 may be broad enough to sustain the defendant's contention, but the section is in derogation of the common law and must be strictly construed. (*Johanns* v. *Ficke, supra.*)

" *If A., an owner, has repairs made on his car by a garage keeper, who surrenders the car to the owner after the repairs are made, and A. sells the car to B., and delivers possession of it, and B. has no notice of the garageman's bill, which is outstanding and unpaid, and then B. takes the car for further repairs to the same garage keeper, would the garage keeper be allowed a lien upon the car for the amount of his bill against A.? Such a case is as well within the literal wording of the statute as is the case before the court.*

" *The lawful possession referred to in the statute must relate to possession derived from the owner as defined in the statute or from one acting under the authority, or with the consent or acquiescence of the owner, and not to possession entirely unconnected with, or even hostile to, such owner's right.* If so great a change in the law as defendant's contention implies had been intended by the Legislature, it should have been more clearly expressed. If this view is sound, the evidence, if received, would have established no right in defendant to hold the car after the demand of June 13th."

The foregoing " A. and B." illustration, while dictum in that case, is exactly the problem now confronting the court.

Even should we assume that the defendant had a lien under the Lien Law, section 184, it seems to me that it should be construed to be good as against a *bona fide* purchaser for a period of only

thirty days, and such lien could be maintained only for storage during thirty days, and for oil and gas supplied during thirty days before the assertion of the lien. But even on this the statute is not clear, because section 184 reads in part as follows: " Except that if the lienor, subsequent to thirty days from the accrual of such lien, allows the motor vehicle or motorcycle out of his actual possession the lien provided for in this section shall thereupon become void against all conditional sale agreements or mortgages covering such motor vehicle or motorcycle executed prior to the accrual of such lien, notwithstanding possession of such motor vehicle or motorcycle is thereafter acquired by such lienor."

It will be observed that no mention is made in the statute of the case of a third person in good faith buying a car from an owner while it is in the owner's possession, away from the garage claiming the lien. It would appear that the purpose of the statute was to prevent a garage keeper from asserting a lien covering a period longer than thirty days against anybody except the owner who contracted for the charges. In any event, in my opinion there has been an absolute lack of sufficient competent proof to prove any lien as against this plaintiff. Indeed, it appears from the testimony that the car had been inactive in the garage, and it must be inferred that no supplies had been furnished for a period of about a month prior to January seventh.

It follows that there must be judgment for the plaintiff, and the defendant's counterclaim is dismissed for failure of proof.